**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 92-3770
_____

CALVIN RHODES,

Plaintiff-Appellee,

versus

GUIBERSON OIL TOOLS, a/k/a F.I.E.,
a/k/a DIV. DRESSER IND. INC.,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Eastern District of Louisiana
_____

(November 23, 1994)

Before EMILIO M. GARZA and DeMOSS, Circuit Judges, and ZAGEL, District Judge.[*]

DeMOSS, delivered the majority opinion.  ZAGEL filed a special concurring opinion.  GARZA filed a dissenting opinion.

Calvin Rhodes sued his former employer, Guiberson Oil Tools ("Guiberson Oil"), alleging that Guiberson Oil terminated him on account of his age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-34 (1988) ("ADEA").  The parties stipulated that a magistrate judge would decide all issues except liability.  The liability issues were tried to a jury who found that Guiberson Oil had discriminated against Rhodes.  Guiberson Oil

_____

[*]District Judge of the Northern District of Illinois, sitting by designation.

moved for judgment as a matter of law both before and after the jury verdict. The magistrate judge dismissed Rhodes' case with prejudice because Rhodes, prior to bringing this action, failed to timely file a charge with the Equal Employment Opportunity Commission. Rhodes appealed the dismissal, contending that his suit was not time-barred. A panel of this court agreed, reversed the magistrate judge's decision setting aside the jury verdict, and remanded for a determination of damages. See Rhodes v. Guiberson Oil Tools Div., 927 F.2d 876 (5th Cir.), cert. denied, ___ U.S. ___, 112 S. Ct. 198, 116 L. Ed. 2d 158 (1991) (Rhodes I). In so holding, the panel specifically noted that the question of whether the evidence supported the verdict was not before it. Id. at 887. After remand, the magistrate judge held a hearing on damages and determined that Rhodes had sustained damages in the amount of $188,866.70. Guiberson Oil renewed its motion for judgment as a matter of law on lack of evidence but the magistrate denied such motion. Guiberson Oil now appeals both the jury's finding of liability and the magistrate judge's calculation of damages. Rhodes cross-appeals both the jury's finding that Guiberson Oil did not willfully violate the ADEA and the magistrate judge's calculation of damages. Finding the evidence of discrimination to be insufficient, we reverse the judgment based on the jury verdict, and render judgment for Guiberson Oil.

2

The critical issue in dispute on this appeal is sufficiency of the evidence to support a jury finding of age discrimination. That issue calls upon us to exercise our appellate review responsibility to determine whether there was sufficient evidence upon which a reasonable jury could rationally conclude that Guiberson Oil discriminated against Rhodes on the basis of age. The testimony presented at trial showed the following.

From 1955 until May 1986, Rhodes sold wireline products for the Atlas Division of Dresser (Atlas) and the corporate predecessors of that division. With the collapse of oil prices in the early 1980's and the resulting sharp decline in domestic oil drilling and production, Atlas along with many other companies in the oil field services industry experienced severe economic difficulties. In response to these pressures, Atlas reduced the size of its sales force from 70 to 25 through major layoffs occurring in 1984, 1985, and early 1986. In each round of these layoffs, Atlas attempted to retain the strongest performers and to let go the least productive personnel. Each time, the Company cut the bottom five percent of performers. Rhodes survived each of these prior reductions in personnel. However, in March 1986, faced with the need to reduce sales forces still further, Rhodes' immediate supervisor decided to let Rhodes go. Rhodes selection for that round of layoffs was based on his lack of technical ability, in comparison to the other remaining sales personnel, and

his declining customer base. Rhodes' supervisor personally informed him both of his layoff and of the reasons for it. However, before Rhodes' termination from Atlas became effective, a company official found Rhodes a position selling another product line and Rhodes accepted this transfer in lieu of termination. This new product line was transferred from Atlas to Guiberson Oil, another division of Dresser, in the middle of 1986. This new product line suffered the same economic difficulties as had occurred at Atlas. In July 1986, Rhodes' supervisor, Lee Snyder, as part of a continuing reduction in force (RIF), released a 27-year old sales representative. In October 1986 it became apparent further reductions in the sales force were needed. Snyder selected Rhodes and a 32-year old "technical representative" for termination because they were his least productive employees. At the time of his termination, Rhodes was 56 years old and received an annual salary of $65,000. On Rhodes' severance report, Guiberson Oil stated both that it discharged Rhodes because of a reduction in work force and that it would consider re-hiring him. Within two months, however, Guiberson Oil hired a 42-year old salesman, at an annual salary of $36,000, to replace Rhodes. During trial, Rhodes conceded that his sales were low and, in fact, conceded that his sales were lower than Lloyd Allen's sales, the salesman in the New Orleans tubing services sector. He even admitted that had he been management, he would have RIF'd himself instead of Allen. Rhodes paraded a group of customers before the jury, all confirming that

4

Rhodes was a hard worker. But each customer also confirmed that his bids were not competitive and that they did not give him the jobs. Guiberson Oil does not say, and never said, that it fired Rhodes because he was lazy; it says it selected Rhodes for reduction in force because his sales were down and his customer base was eroding, both of which placed him in the bottom five percent of performers and below Allen. Rhodes' trial strategy was to attribute the low sales to the company's bidding practice and use of in-house materials instead of materials competitively priced in the open market. This showing did nothing to undermine the legitimate business reason proffered by Guiberson Oil.

Next, it is important to note what is not in the record. There is no testimony of any kind that Rhodes' age or the age of any other employee was ever mentioned or discussed as a decision-making factor. There is no testimony from any fellow employee that Guiberson Oil's management personnel talked about Rhodes' age. There is no documentary evidence indicating any internal memorandum of Guiberson Oil which discussed Rhodes' age. There was no rebuttal testimony by Rhodes that could have established that Guiberson Oil had a pattern or practice of reducing the sales force by terminating older employees. There was no rebuttal testimony from Rhodes that the 32-year old technical representative was not actually terminated at the same time as Rhodes. Finally, Rhodes did not rebut testimony from Snyder, a sales manager above Rhodes, that Rhodes and the 32-year old "technical representative" were

5

terminated "because they were his least productive employees." In support of his claim that he had been terminated "because of his age," Rhodes offered only the following:

1. After Rhodes was terminated, Guiberson Oil hired a 42-year old[1] sales representative to cover sales in the New Orleans area;

2. Guiberson Oil paid this 42-year old $3,000 per month, which was approximately $2,000 per month less than Rhodes had been making; and

3. Alfred Lee Snyder (a sales manager below Givens and above Rhodes) testified that Givens stated once that he could hire two younger salesmen for what some of the older salesmen were costing. Snyder later retracted "younger" and clarified that he said two "new" salesmen for what some of the "other" salesmen were costing, but it was Snyder who offered the statement as the only reference made to age.

The first two items of proof offered by Rhodes in support of his discrimination claim simply completed the prima facie case. The third item of his proof was not spoken with Rhodes in mind and makes no reference to either Rhodes' age or the age of any "other" employees who were being over paid. Surely there is no rational basis for inferring discrimination on the basis of age from such generalized comments as this. In short, our review of the evidence

---

[1]This "replacement" was over 40 and therefore within the protected class but was younger than Rhodes.

in this case leads us to conclude that there is no evidence or testimony which shows any connection between Rhodes' age and the decision to terminate his employment.[2]  In several ADEA cases decided previously in this circuit, it is clear that our circuit has not closed its eyes to situations in which this fundamental lack of evidence exists.[3]

In his briefs, Rhodes attempts to argue away the insufficiency of the evidence problem by reiterating the essentials of his prima facie proof and by repeated references to language used by the other panel of this court who considered the interlocutory appeal in Rhodes I.  Rhodes argues that these statements indicate that the severance report was "false" and that the reasons offered by

---

[2]Our colleague in dissent castigates us for our detailed review of what is and what is not in the testimony before the jury. We note however that Rhodes did not point out in his brief and the dissent does not mention any other evidence, direct or indirect, other than the matters identified in our review of the evidence as being relevant to a review of sufficiency of the evidence claim. Furthermore, there were no conflicts in the testimony where the jury's credibility choice would be binding.

[3]See Moore v. Eli Lilly & Co., 990 F.2d 812, 817 n.24 (5th Cir. 1993) (listing cases in which plaintiffs failed to meet their burden of proof, including Waggoner v. City of Garland, 987 F.2d 1160 (5th Cir. 1993); Guthrie v. Tifco Indus., 941 F.2d 374, 378 (5th Cir. 1991); Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 813-814 (5th Cir. 1991); Hanchey v. Energas Co., 925 F.2d 96, 98-99 (5th Cir. 1990) (all affirming summary judgment in favor of defendant); Little v. Republic Refining Co., 924 F.2d 93, 96-98 (5th Cir. 1991) (affirming grant of JNOV in favor of defendant); Molnar v. Ebasco Constructors, Inc., 986 F.2d 115, 118 (5th Cir. 1993); Laurence v. Chevron, U.S.A. Inc., 885 F.2d 280, 284-85 (5th Cir. 1989) (both reversing jury verdict in favor of plaintiff)).

Guiberson Oil therein were "completely misleading" and that consequently Guiberson Oil's reasons were "pretextual."[4]

The Rhodes I opinion, however, expressly stated that the panel had not addressed the issue of the sufficiency of the evidence, and therefore, whatever conclusions that panel reached are clearly dicta as to that issue in this appeal. We are at a total loss to understand how dicta in an opinion on interlocutory appeal, which made no attempt to evaluate the evidence considered by the jury, could have any bearing whatsoever on the question of the sufficiency of the evidence before the jury in this appeal.

During pendency of this appeal, the Supreme Court decided St. Mary's Honor Center v. Hicks, 113 S. Ct. 2742 (1993). By Rule 28(j) letter briefs, both sides furnished copies of that decision with their respective arguments as to how that decision should impact our determination of this case. Like many 5-to-4 decisions of the Supreme Court, the opinion in St. Mary's is not easy to analyze, but from our view, that opinion breaks down into the following primary and secondary holdings:

---

[4]The dissent echoes Rhodes' arguments, particularly as to what is called "discrepancies between Rhodes' severance report and Guiberson's trial justification for his discharge." We see no discrepancy whatsoever between the language of the severance report indicating that Rhodes was terminated because of a "reduction in force" and the testimony presented by Guiberson as to the history of reductions in force which took place in the offices in which Rhodes was employed and ultimately affected Rhodes. Likewise, the language of the severance report indicating that Guiberson would "consider rehiring" Rhodes is simply a polite way of confirming that the employee was not fired for misconduct.

8

A.   The primary holding of St. Mary's is that an employee plaintiff is not entitled to judgment as a matter of law, even though the factfinder concludes that the reasons for his discharge proffered by the employer were not the real reasons for such discharge.  St. Mary's, 113 S. Ct. at 2751.

B.   The secondary holdings of St. Mary's were:

(1)   Once a Title VII case has been fully tried to the factfinder, the McDonnell Douglas/Burdine framework, regarding prima facie case and the order and burdens for production of evidence, becomes irrelevant and disappears; and a case involving a claim of discrimination should then be treated at the trial and appellate level just like any other case calling for an ultimate determination of fact. Id. at 2753.

(2)   The ultimate factual determination in a Title VII case is: "Did the employer take an action [i.e. failure to hire, failure to promote or discharge] by reason of a prohibited factor [i.e., sex, race, religion, etc.]?".  Id. at 2749.

(3)   The burden of proof and persuasion on that ultimate fact remains at all times on the plaintiff.  Id. at 2749.

9

C.    In addition, there were two other subordinate holdings which were material to the court's conclusion in St. Mary's:

    (1)  The term "pretext" means "pretext for discrimination". To establish that a proffered reason for an action taken by an employer was "pretext for discrimination," the plaintiff must show both that the employer's proffered reason was false and that discrimination was the real reason. Id. at 2752.

    (2)  Finally, the language of Burdine that a plaintiff may show discrimination "indirectly by showing that the employer's proffered explanation is unworthy of credence" is dictum, which is inconsistent with other language in Burdine and McDonnell Douglas. To the extent that such language suggests that "disproof of the defendant's reason [is] a totally independent, rather than an auxiliary, means of proving unlawful intent," such language is "an inadvertence." Id. at 2753.

We have described in some detail our conclusions as to these holdings of the majority opinion in St. Mary's because that decision makes two changes which are critically important to the resolution on this case:

10

(a)    first, whatever the term "pretext" may have meant in the past, under St. Mary's, it can now only mean "pretext for discrimination;" and

(b)    second, when read as a whole and considering the controversy between the majority opinion and the dissent in St. Mary's, it is clear that the Supreme Court ruled against the theory of "pretext only" under which a Title VII plaintiff automatically wins if she successfully shows that the reasons proffered by her employer for her termination are factually false.

In this case, Rhodes and our colleague in dissent would urge us to conclude that there is yet a third position articulated within the majority decision in St. Mary's by the language quoted in Rhodes' 28(j) letter.[5]  We decline such invitation, first because the quoted language is obviously dicta.  The trier of fact in St. Mary's did not make a determination of "discrimination," and the question before the Supreme Court was not the validity of the trial court's determination of no discrimination, but the validity of the Circuit Court's reversal of that determination as a matter

---

[5]That position is that the district court is compelled to submit the case to the jury once plaintiff creates a fact issue as to whether the employer's asserted reason is true and is based on the following language:  "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination, . . . and the Court of Appeals was correct when it noted that, upon such rejection, 'no additional proof of discrimination is required.'"  St. Mary's, 113 S. Ct. at 2749.

11

of law.  Consequently, in determining what language of St. Mary's applies to or controls our case, the "dicta language" should yield to the language involved in the holding of St. Mary's itself. Secondly, St. Mary's is just not a sufficiency of the evidence case, and, we should look not only at what the Supreme Court said in St. Mary's, but what the Court did, i.e., the Court reversed and remanded the case to the Circuit Court to apply normal appellate review -- "which should be conducted on remand in this case under the `clearly erroneous' standard of Federal Rules of Civil Procedure 2(A)" -- to the determinations made by the trial court in St. Mary's[6].  Id. at 2756.  The Supreme Court concluded by saying that such appellate review would be made "consistent with this opinion."  Implicit in the function of appellate review is the responsibility to determine the sufficiency of the evidence when that has been properly preserved in the trial below.

This case is not the first time our circuit and other circuits have addressed the impact of St. Mary's on later cases.  In Bodenheimer v. PPG Industries, Inc., 5 F.3d 955 (5th Cir. 1993), we held that St. Mary's requires a plaintiff at the summary judgment stage to tender some evidence that age was a determinative factor in the employment decision, and that plaintiffs could not rely

---

[6]The holding by the trial court in St. Mary's was:  "Plaintiff has succeeded in proving that the violations for which he was disciplined were pretextual reasons for his demotion and discharge. Plaintiff has not, however, proven by direct evidence or inference that his unfair treatment was motivated by his race."  See Hicks v. St. Mary's Honor Center, 970 F.2d 487, 492 (8th Cir. 1992) (internal corrections omitted).

12

solely on conclusionary allegations trying to discredit the employer's reasons. Bodenheimer, 5 F.3d at 959. Similarly, in Mitchell v. Data General Corp., 12 F.3d 1310 (4th Cir. 1993), the Fourth Circuit held that the employer's conclusory statements about performance, which were not expressly age-related, were not sufficient to raise a fact issue as to the employer's legitimate non-discriminatory explanation because there was no direct evidence indicating that plaintiff was discharged based on age. Mitchell, 12 F.3d at 1318 (affirming summary judgment in favor of the employer). Additionally, in Durham v. Xerox Corporation, 18 F.3d 836 (10th Cir. 1994), the Tenth Circuit cited St. Mary's for the proposition that when the employer tenders proof of a legitimate non-discriminatory reason for not promoting the employee, "the presumption of discrimination from the employee's prima facie case simply drops out of the picture" and the trier of fact must then decide the ultimate question of intentional discrimination. Although the Tenth Circuit cited the very same St. Mary's language relied upon by Rhodes in his 28(j) letter, it nonetheless concluded that summary judgment was still appropriate because the employee had not offered sufficient evidence to support a finding that the employer's stated reason was a pretext for discrimination. Id. at 840 (affirming summary judgment in favor of the employer).

Finally, in Anderson v. Baxter Health Care Corporation, 13 F.3d 1120 (7th Cir. 1994), the Seventh Circuit recognized that after St. Mary's, an ADEA plaintiff is not entitled to judgment as

13

a matter of law simply because she proves her prima facie case and then shows that the employer's proffered reasons for her discharge are false. <u>Anderson</u>, 13 F.3d at 1125-26. In <u>Anderson</u>, the employer claimed it had discharged Anderson based on poor performance. The Court held that even if Anderson had proven that the employer's stated reason, performance, was a pretext, and that plaintiff had been discharged to reduce salary, such facts would not establish age discrimination. <u>Id</u>.

The employee in <u>Anderson</u> also contended that the employer committed age discrimination by firing him simply to reduce salary costs; and cited a previous decision in the Seventh Circuit which supported that contention. However, the Seventh Circuit expressly recognized that that prior decision had, in effect, been overturned by the unanimous decision of the Supreme Court in <u>Hazen Paper Company v. Biggins</u>, ___ U.S. ___, 113 S. Ct. 1701 (1993), in which the Supreme Court held that "there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age." <u>Hazen Paper</u>, 113 S. Ct. at 1705. The Supreme Court decided <u>Hazen Paper</u> on April 20, 1993, and decided <u>St. Mary's</u> on June 25, 1993. In <u>Hazen Paper</u> the Supreme Court mentions that it is considering the <u>St. Mary's</u> case; but, in its <u>St. Mary's</u> opinion, the Supreme Court does not cite or refer to <u>Hazen Paper</u> at all. <u>St. Mary's</u> is of course a Title VII case and

14

<u>Hazen Paper</u> is an ADEA case.  Since the case before us is an ADEA case, we believe that <u>Hazen Paper</u> is more relevant and determinative to this decision than <u>St. Mary's</u>.  We turn now to an analysis of <u>Hazen Paper</u>.

In <u>Hazen Paper</u>, Biggins (the employee) sued his employer (Hazen Paper) under ADEA and ERISA and asserted pendent claims in tort and contract under state law.  As in this case, <u>Hazen Paper</u> was fully tried to a jury.  The jury found that Hazen Paper violated the ADEA and awarded Biggins $560,775 in damages.[7]  The jury also found that the ADEA violation was willful (the jury in this case did not find a willful violation).  Both Biggins and Hazen Paper filed post-trial motions, including specifically a motion by Hazen Paper under Rule 50(b) for judgment as a matter of law or in the alternative for a new trial.  The trial court granted judgment as a matter of law in favor of Biggins on the ADEA violation and on one of the state law claims, awarding damages and accepting the jury's advisory finding that the ADEA violation was willful.  On appeal, the Circuit Court affirmed the trial court, relying heavily on evidence that Hazen Paper had fired Biggins in order to prevent his pension benefits from vesting as support for the jury finding of an ADEA violation.  On appeal, after reiterating the distinction between "disparate treatment" and "disparate impact" cases, the Supreme Court reversed the Circuit

_____

[7]The jury also found for Biggins on his ERISA claim and some of his state tort and contract claims.

15

Court and held: "[w]e now clarify that there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age." Hazen Paper, 113 S. Ct. at 1705. Furthermore, the Supreme Court stated, "[a] disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a determinative influence on the outcome." Id. at 1706. Finally, the Supreme Court stated:

> "Because age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus, it is incorrect to say that a decision based on years of service is necessarily `age based'". Id. at 1707.

Accordingly, in Hazen Paper the Supreme Court reversed the ADEA claim and remanded the case to the Circuit Court to "reconsider whether the jury had sufficient evidence to find an ADEA violation." That is the very task which we now have appropriately addressed here; and in our judgment, Rhodes presented no evidence or testimony from which a jury could rationally conclude that age "had a determinative influence" on Guiberson Oil's decision to terminate him.

We recognize that our dissenting colleague can find opinions from other circuits which support his contentions as to the meaning of St. Mary's or more specifically as to the concept that the language quoted in footnote 5, *supra*, was intended to fashion some

16

new hybrid test as to what was required to show discrimination.[8] If read and applied as suggested by the dissent, the quoted language would lead to two very momentous developments:

> A.  Summary judgments for the employer would be eliminated in Title VII and ADEA suits in cases where even though there was absolutely no evidence whatsoever of discriminatory animus or actions the employee plaintiff establishes his

---

[8]With all due respect to our colleague, the six cases cited in his dissent do not all support his position.  Of the six cases cited by the dissent, four affirmed judgment in favor of the employer and one reversed judgment in favor of the employee. At least one, LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 843 (1st Cir. 1993), clearly holds that the test governing when an ADEA case is entitled to go to the jury is not whether the employee has created a fact issue as to the employer's articulated reason but whether there is evidence from which a reasonable juror could find that the employment decision was motivated by age animus. Id. at 842-43; see also Marcantel v. Dep't of Transp. and Dev., No. 93-3717, slip op. at 453 (5th Cir. Nov. 3, 1994) (St. Mary's settled the issue that "the `pretext-only' doctrine is not enough; even if the employee proves that the employer's nondiscriminatory reason is pretextual, the plaintiff must prove that an unlawful discriminatory intent motivated the employer's action"); Seman v. Coplay Cement Co., 26 F.3d 428, 433 (3d Cir. 1994) (St. Mary's "requires that once an employer has met its burden of production by coming forward with a nondiscriminatory business reason for discharging a protected employee, the plaintiff-employee must then prove that the business reason was pretextual and that he was intentionally discriminated against on the basis of age.  Proof of one without the other will not suffice."); Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1125-26 (7th Cir. 1994) (affirming summary judgment for the employer notwithstanding evidence creating a fact issue that the employer's nondiscriminatory reason was false). Manzer v. Diamond Shamrock Chem Co., 29 F.3d 1078 (6th Cir. 1994), involved only the issue of the ADEA's application to religious institutions. Further, we do not by this decision create a Circuit conflict where there was none before.  Compare, e.g., Leblanc, 6 F.3d 836 (1st Cir. 1993) with  Washington v. Garrett, 10 F.3d 1421 (9th Cir. 1993).

17

prima facie case and raises a question of fact as to the employer's non-discriminatory explanation; and

B. If the case is then tried on its merits and the factfinder determines that the employer's non-discriminatory reason is not believable, the employee is entitled to judgment which cannot be set aside for insufficiency of the evidence even though the trial record is absolutely devoid of any evidence or testimony which relates to discriminatory actions or animus.

In our view, these results are the same as would have occurred if the minority view in St. Mary's had in fact been adopted by the majority. We proceed on the assumption that the majority in St. Mary's did not inadvertently let the cat out of the bag.

Accordingly, we REVERSE the decision of the magistrate judge to deny Guiberson Oil's motion for judgment as a matter of law and render judgment in favor of Guiberson Oil. In view of this decision, the other points of error raised on appeal by Guiberson Oil and in his cross-appeal by Rhodes are moot.

ZAGEL, District Judge, specially concurring.

I join in Judge DeMoss' opinion, but I write separately because I am troubled by the instructions tendered to the jury in this case. The jury was told:

> Though the defendant claims a legitimate business reason for the plaintiff's discharge, you may still find for the plaintiff if you find that he has proven by a preponderance of the evidence, that the reasons stated by the defendant were not the true reasons for the plaintiff's discharge, <u>or</u> that the plaintiff's age more likely than not was a determining factor in his discharge. (Emphasis added.)

This instruction is inconsistent with the Supreme court's opinion in <u>St. Mary's Honor Center v. Hicks</u>, 113 S. Ct. 2742 (1993), and ought not be given. I read <u>St. Mary's</u> to say that a jury cannot find liability for the plaintiff solely because the defendant gave a false reason at the time of discharge. This is what I believe the Supreme Court meant when it said that "nothing in law would permit us to substitute for the required finding that the employer's action was the product of unlawful discrimination, the much different (and much lesser) finding that the employer's explanation of its actions was not believable." <u>St. Mary's</u>, 113 S. Ct. at 2751.

Nothing in law necessarily prevents a jury from rejecting the proffered reason at trial and inferring "the ultimate fact of intentional discrimination." <u>Id</u>. at 2749. Whether the "lie" serves as a proxy for discrimination necessarily depends on the

19

context in which the "lie" is uttered. See id. at 2752 (employer's proffered reason is not a pretext for discrimination "unless it is shown both that the reason was false, and that discrimination was the real reason")(emphasis in original.) The basis for this is simply a recognition that employers rarely tell employees that they are being discharged for being lousy workers. Employers often "lie" in different ways for legitimate business reasons, one of which is to soften the blow to the employee by saying that there is a reduction in force or that business is being shifted when, in fact, they are discharging the employee for poor performance. Clearly, this is not the only ground for the decision in St. Mary's. But I believe it is one reason. And, I believe the court in St. Mary's proposed to remedy this problem by carefully drafting jury instructions so that less emphasis is placed on the employer's lie at the time of discharge.

The jury here should have been instructed that it may hold the defendant liable only if it finds that the plaintiff has proven that the plaintiff's age more likely than not was a determining factor in the discharge. The jury also should have been instructed that it may make its usual decisions about whom to believe and that if it finds that the defendant proffered false reasons for the plaintiff's discharge at trial, it may (but is not compelled to) infer from the context of the lie and the other evidence the ultimate fact that age was a determining factor in the discharge.

20

EMILIO M. GARZA, Circuit Judge, dissenting:

Because the majority 1) fails to view the evidence in the light most favorable to the jury verdict, 2) fails to articulate and employ the proper appellate standard of review, and 3) fails to analyze and apply Supreme Court precedent properly, I respectfully dissent.

**I**

Calvin Rhodes began his employment with Guiberson Oil and other divisions of Dresser Industries in 1955 as a salesman of oil-industry-related products.[1]  On October 31, 1986, Guiberson Oil discharged Rhodes, allegedly because of a reduction in force necessitated by a recession in the oil industry.  At the time of his termination, Rhodes was fifty-six years old and received an annual salary of $65,000.  On his severance report, Guiberson Oil stated both that it had discharged Rhodes because of a reduction in work force and that it would consider rehiring him.  Within two months, however, Guiberson Oil hired a forty-two year old salesman, at an annual salary of $36,000, to replace Rhodes.

Rhodes subsequently sued Guiberson Oil for violating the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 (1988) ("ADEA").  A jury found that Guiberson Oil terminated Rhodes from his employment because of his age, but also found that Guiberson

---

[1]     In order to properly exercise our appellate function, we view the evidence in the light most favorable to the jury verdict, that is, to Rhodes. *See Boeing Co. v. Shipman*, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc).

Oil had not willfully violated the ADEA.[2] The magistrate judge, after hearing further testimony on the issue of damages, found that Rhodes had sustained damages in the amount of $188,866.70 as a result of Guiberson Oil's unlawful conduct. Both Guiberson Oil and Rhodes now appeal the jury's findings on liability issues and the magistrate judge's calculation of damages.

## II

### A

Guiberson Oil, which moved for a directed verdict both at the close of the plaintiff's case-in-chief and at the close of all the evidence, contends that the evidence is insufficient to support the jury's finding of age discrimination. Guiberson Oil thus argues that the magistrate erred in not granting its motion for judgment notwithstanding the verdict ("JNOV").[3] In reviewing a motion for JNOV,

---

[2] The parties stipulated that a magistrate judge would decide all issues except liability. Consequently, after the jury found that Guiberson Oil had discriminated against Rhodes, the magistrate judge dismissed Rhodes' case with prejudice because Rhodes, prior to bringing this action, failed to timely file a charge with the Equal Employment Opportunity Commission. Rhodes appealed the dismissal, contending that his suit was not time-barred. We agreed, reversed the magistrate judge's decision setting aside the jury verdict, and remanded for a determination of damages. *See Rhodes v. Guiberson Oil Tools Div.*, 927 F.2d 876 (5th Cir.), *cert. denied*, ___ U.S. ___, 112 S. Ct. 198, 116 L. Ed. 2d 158 (1991) [hereinafter *Rhodes I*]. In so holding, we specifically noted that the question of whether the evidence supported the verdict was not before us. *Id.* at 878.

[3] This case was tried before the effective date of the 1991 amendments to the Federal Rules of Civil Procedure. Rule 50 now uses the term "judgment as a matter of law" for both a directed verdict and a JNOV.

22

the Court should consider all of the evidence))not just that evidence which supports the non-mover's case))but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting the motion[] is proper. On the other hand, if there is substantial evidence opposed to the motion[], that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion[] should be denied. . . . [I]t is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.

*Boeing Co. v. Shipman*, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc).

**B**

The ADEA makes it "unlawful for an employer . . . to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). To establish a prima facie case of age discrimination, the plaintiff "must demonstrate that: (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of the discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993). If the plaintiff establishes a prima facie case, he creates a presumption of discrimination, *Texas Dept. of Community Aff. v. Burdine*, 450 U.S. 248, 254, 101 S. Ct. 1089, 1094, 67 L. Ed. 2d 207 (1981), and the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason"

23

for the challenged action.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973).  The defendant may meet this burden by presenting evidence that, "*if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action."  *St. Mary's Honor Ctr. v. Hicks*, ___ U.S. ___, ___, 113 S. Ct. 2742, 2747, 125 L. Ed. 2d 407 (1993).  If the defendant meets its burden, the presumption raised by the plaintiff's prima facie case disappears.  *Burdine*, 450 U.S. at 255 & n.10, 101 S. Ct. at 1095 & n.10.  The plaintiff then has the opportunity to demonstrate, through presentation of his own case and through cross-examination of the defendant's witnesses, that the proffered reason was not the true reason for the employment decision, and that age was.  *St. Mary's*, ___ U.S. at ___, 113 S. Ct. at 2747; *Bodenheimer*, 5 F.3d at 957.  If he succeeds in doing so, "[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination."  *St. Mary's*, ___ U.S. at ___, 113 S. Ct. at 2749.  On appeal, Guiberson Oil conceded that Rhodes had established a *prima facie* case.[4]  Thus, we must determine only whether the evidence supports the conclusion that

---

[4]     I.e., Guiberson conceded that (1) Rhodes was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was replaced by someone substantially younger within two months of his discharge.

24

Guiberson Oil's proffered reason was not the true reason for terminating Rhodes. *Id.* ("[R]ejection of the defendant's proffered reasons[] will *permit* the trier of fact to infer the ultimate fact of intentional discrimination, and . . . , upon such rejection, no additional proof of discrimination is required.").

On Rhodes' severance report, Guiberson Oil indicated that Rhodes was discharged because of a reduction in work force and that it would consider rehiring Rhodes. The evidence adduced at trial, however, showed that these reasons were false: Rhodes' position was not eliminated as a reduction in force. Moreover, contrary to the statements contained in the severance report, Guiberson Oil's defense at trial was that Rhodes was discharged because of his poor work performance. This contradiction between the false reasons given on the severance report and the justification presented at trial could reasonably lead a jury to disbelieve Guiberson's explanation. Consequently, the evidence supports the jury's finding that Guiberson Oil's proffered reasons for terminating Rhodes were pretextual. That disbelief, together with the elements of Rhodes' prima facie case, *permitted*))but did not require))the jury to find that Guiberson Oil intentionally discriminated against Rhodes on account of his age. *See St. Mary's*, ___ U.S. at ___, 113 S. Ct. at 2749; *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1123-24 (7th Cir. 1994) (noting that "the plaintiff *may* prevail in a discrimination case by establishing a prima facie case and by showing that the employer's proffered nondiscriminatory reasons for

25

. . . discharge are false"); *Washington v. Garrett*, 10 F.3d 1421, 1433 (9th Cir. 1993) (holding that "the factfinder . . . is entitled to infer discrimination from plaintiff's proof of a *prima facie* case and showing of pretext without anything more").

Additionally, that Guiberson Oil deliberately misled Rhodes concerning the circumstances of his discharge and that Guiberson Oil hired a younger person to replace Rhodes shortly after his discharge constitute relevant evidence of intentional age discrimination. *See, e.g., Ramirez v. Allright Parking El Paso, Inc.*, 970 F.2d 1372, 1377-78 (5th Cir. 1992) (holding that evidence that plaintiff was replaced with younger person and that the employer's proffered reason for discharge))that it fired plaintiff for poor job performance))was pretextual constituted evidence of intentional age discrimination). Accordingly, I would hold that the evidence sufficiently supported the jury's verdict, and the magistrate correctly refused to grant Guiberson Oil's motion for JNOV or its motion for a new trial.[5]

## III

### A

---

[5] *Compare Atkin v. Lincoln Prop. Co.*, 991 F.2d 268 (5th Cir. 1993) (reversing jury verdict of age discrimination where defendant did not concede that plaintiff established prima facie case and plaintiff produced no evidence that defendant's reason for terminating him was pretext for discrimination); *Moore v. Eli Lilly Co.*, 990 F.2d 812 (5th Cir.) (upholding grant of summary judgment for defendant where plaintiff established prima facie case but failed to produce any evidence that defendant's explanation for its action was pretextual), *cert. denied*, ___ U.S. ___, 114 S. Ct. 467, 126 L. Ed.2d 419 (1993).

26

The majority, however, finds Rhodes' evidence insufficient to support the jury's finding of intentional discrimination. My first disagreement with the majority concerns its review of the evidence. As an appellate court, we do not substitute our own view of the weight of the facts for that of the jury. Instead, we view the evidence in the light most favorable to the jury verdict. *Boeing Co.*, 411 F.2d at 374-75. Because the jury found in favor of Rhodes, we view the evidence in the light most favorable to Rhodes. *See id.* The majority has failed to do this.[6]

Moreover, our proper appellate function is not to reweigh the evidence, but only to determine if there was enough to support the jury's finding. *See id.* ("[I]t is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences and determine the credibility of witnesses."). Therefore, the question is not whether *we* believe that Rhodes "undermine[d] the legitimate business reason proffered by Guiberson," slip op. at 5, but whether the jury could reasonably have disbelieved Guiberson's evidence. Similarly, although the majority elaborates on "what is *not* in the record," *see* slip op. at 5, whether certain items are missing from the evidence presented is irrelevant if a jury could nonetheless find intentional discrimination. Rhodes need not have had an overwhelming case,

---

[6]     In fact, the majority's recitation of the facts mirrors the statement of facts in *Guiberson*'s brief almost verbatim. *Compare* slip op. at 3-5 *with* Br. of Def.-Appellant at 4-7. Guiberson clearly did not construe the facts in its brief to favor Rhodes.

27

only a sufficient one.  Moreover, much of evidence that the majority castigates Rhodes for lacking is direct evidence,[7] which is typically absent in discrimination cases and not required to prove intentional discrimination.[8]  Accordingly, its absence does not mandate judgment in Guiberson's favor.

The majority limits the evidence *it* considers favorable to Rhodes to three items.[9]  As the panel in *Rhodes I* noted, however, Rhodes also provided the severance report.  *See Rhodes I*, 927 F.2d at 881.  The majority seeks to eliminate this evidence by stating that the conclusions derived in *Rhodes I* are not conclusive in this proceeding, and it characterizes these conclusions as dicta in this appeal.  I agree.  Nonetheless, that this court need not follow the *conclusions* of the prior panel does not require us to ignore the *evidence* underlying those conclusions.[10]  Yet the majority does not

---

[7]     *See* slip op. at 5 (criticizing Rhodes for failing to provide evidence of discussions of his age by Guiberson management or other employees or documentation that Guiberson's decision related to his age).

[8]     A plaintiff may use either direct or circumstantial evidence to prove a case of intentional discrimination.  *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 n.3, 103 S. Ct. 1478, 1481 n.3, 75 L. Ed. 2d 403 (1983).  Because direct evidence is rare in discrimination cases, a plaintiff ordinarily uses circumstantial evidence and inferences therefrom to satisfy her burden of persuasion. *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994) (applying inferential test developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973)).

[9]     1) Guiberson replaced Rhodes with a younger person; 2) Guiberson saved approximately $2,000 per month in salary costs by replacing Rhodes; and 3) "[o]n one occasion Jack Givens, a general manager, said to Lee Snyder, Rhodes' supervisor, that could `hire two salesmen for what some of the others are costing me.'"  *See* slip op. at 6.

[10]     *See Mitchell v. Data General Corp.*, 12 F.3d 1310, 1317 (4th Cir. 1993) ("The evidence, however, that was offered to establish the prima facie case remains in the case, together with any evidence presented to show that the

28

include in Rhodes' evidence the discrepancies between Rhodes' severance report and Guiberson's trial justification for his termination. Instead, the majority characterizes the severance report in Guiberson's favor, *see* slip op. at 8 ("[T]he language of the severance report indicating that Guiberson would `consider rehiring' Rhodes is simply a polite way of confirming that the employee was not fired for misconduct."), and reweighs the evidence on its own, *see id.* ("We see no discrepancy . . . .") (emphasis added). Because this is not the proper function of an appellate court, I disagree with the majority's analysis of the evidence.[11]

---

employer's explanation was untrue or pretextual."); *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 843 (1st Cir. 1993) ("[T]he trier of fact may consider, along with other evidence, the evidence put forward to show that the employer's justification for its adverse employment action was a pretext."), *cert. denied*, ___ U.S. ___, 114 S. Ct. 1398, 128 L. Ed. 2d 72 (1994).

[11] The majority buttresses its conclusion by citing "several ADEA cases decided previously in this circuit, [in which] it is clear that our circuit has not closed its eyes to situations in which this fundamental lack of evidence exists." *See* slip op. at 7 & n.2 (citing *Moore v. Eli Lilly & Co.*, 990 F.2d 812, 817 n.24 (5th Cir.), *cert. denied*, ___ U.S. ___, 114 S. Ct. 467, 126 L. Ed. 2d 419 (1993)). What the majority apparently closed *its* eyes to is that the same footnote in *Moore* to which it cites indicates that this circuit has also frequently found that sufficient evidence in a plaintiff's case was *not* lacking. *See Moore*, 990 F.2d at 817 n.24 (citing successful cases, including *Ramirez v. Allright Parking El Paso, Inc.*, 970 F.2d 1372, 1377 (5th Cir. 1992); *Lloyd v. Georgia Gulf Corp.*, 961 F.2d 1190, 1194-95 (5th Cir. 1992); *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 122-24 (5th Cir. 1992); *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1146-47 (5th Cir. 1991); *Normand v. Research Inst. of Am., Inc.*, 927 F.2d 857, 862-64 (5th Cir. 1991); *Young v. City of Houston*, 906 F.2d 177, 182 (5th Cir. 1990); *DeLoach v. Delchamps, Inc.*, 897 F.2d 815, 818-19 (5th Cir. 1990); *Burns v. Texas City Ref., Inc.*, 890 F.2d 747, 749-51 (5th Cir. 1989); *Hansard v. Pepsi Cola Metro Bottling Co.*, 865 F.2d 1461, 1465-66 (5th Cir.), *cert. denied*, 493 U.S. 842, 110 S. Ct. 129, 107 L. Ed. 2d 89 (1989); *Uffelman v. Lone Star Steel Co.*, 863 F.2d 404, 407-08 (5th Cir.), *cert. denied*, 490 U.S. 1098, 109 S. Ct. 2448, 104 L. Ed. 2d 1003 (1989)). Indeed, *Moore* also indicates that the failed cases to which the majority refers are "smaller" in number. 990 F.2d at 817 n.24.

**B**

The majority also fails to analyze and apply Supreme Court precedent properly. After stating various portions of the holding in *St. Mary's Honor Center v. Hicks*,[12] the majority states that the following language from *St. Mary's* is "obviously dicta"[13]:

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination, . . . and the Court of Appeals was correct when it noted that, upon such rejection, `no additional proof of discrimination is required.'"

___ U.S. at ___, 113 S. Ct. at 2749 (citation omitted).[14] I question the majority's conclusion. Explaining that the plaintiff was entitled to only a permissive inference of discrimination, not a mandatory one, was a necessary part of the holding. *See Connecticut v. Doehr*, 501 U.S. 1, ___, 111 S. Ct. 2105, 2122, 115 L. Ed. 2d 1 (1991) (Rehnquist, C.J., concurring) (defining dicta as a court's "discuss[ion of] abstract and hypothetical situations not before it"); *see also* Black's Law Dictionary (6th ed. 1990)

---

[12] ___ U.S. ___, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).

[13] *See* slip op. at 10.

[14] *St. Mary's* is consistent with our pre-*St. Mary's* cases allowing the jury to infer the fact of intentional discrimination from evidence establishing the plaintiff's prima facie case *and* proof that the defendant's proffered reason for its action was pretextual. *E.g.*, *Moore v. Eli Lilly & Co.*, 990 F.2d 812, 816 (5th Cir.) (noting that "if a plaintiff is able to demonstrate that the employer's facially legitimate, non-discriminatory reason for its action is pretext, the inference created by the prima facie case could well be the basis for a favorable verdict for the plaintiff"), *cert. denied*, ___ U.S. ___, 114 S. Ct. 467, 126 L. Ed. 2d 419 (1993); *id.* at 817 n.24 (collecting cases). To the extent the jury instruction given below arguably departed from our prior cases by allowing the jury to infer discrimination solely from proof of pretext, Guiberson Oil waived any claim of error by not objecting to the jury charge below. *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1163 (5th Cir. 1992).

(defining dicta as "[o]pinions of a judge which do not embody the resolution or determination of the specific case before the court" and "[e]xpressions in court's opinion which go beyond the facts before court").  Elucidating the proper standard to be applied on remand was neither abstract nor hypothetical.  Instead, it assisted in the resolution of the specific case, and it did not go any further than the facts before the court.  Indeed, the Court of Appeals on remand declined to accept the prior trial court's holding of no discrimination and remanded for consideration of the very language stated above.  *Hicks v. St. Mary's Honor Center*, 2 F.3d 264, 266-67 (8th Cir. 1993) (quoting the above language and remanding "because neither the parties nor the district court has had a full and fair opportunity to apply the Supreme Court's newly clarified analytical scheme").

Since *St. Mary's* was decided, six other Circuits have adopted this specific language as an important holding of *St. Mary's* and have employed its permissive inference standard.  *See LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 843 (1st Cir. 1993) (quoting *St. Mary's* and stating that "[s]uch evidence [of pretext], coupled with the elements of the employee's prima facie case (and, of course, any other evidence), may (or may not) lead the factfinder to infer that the employer has engaged in intentional discrimination"), *cert. denied*, ___ U.S. ___, 114 S. Ct. 1398, 128 L. Ed. 2d 72 (1994); *DeMarco v. Holy Cross High Sch.*, 4 F.3d 166, 170 (2d Cir. 1993) ("Proof that the employer has provided a false reason for its

32

action permits the finder of fact to determine that the defendant's actions were motivated by an improper discriminatory intent, but does not compel such a finding."); *Seman v. Coplay Cement Co.*, 26 F. 3d 428, 433 (3d Cir. 1994) ("*Hicks*[15] teaches, though, that rejection of the employer's proffered nondiscriminatory reason will *permit* the trier of fact to infer the ultimate fact of intentional discrimination, so long as there is a finding of discrimination."); *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994) ("*Hicks* clarified that the only effect of the employer's nondiscriminatory explanation is to convert the inference of discrimination based upon the plaintiff's prima facie case from a mandatory one which the jury *must* draw, to a permissive one the jury *may* draw, *provided* that the jury finds the employer's explanation `unworthy' of belief."); *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1123-24 (7th Cir. 1994) ("The [*Hicks*] Court explicitly states that the plaintiff *may* prevail in a discrimination case by establishing a prima facie case and by showing that the employer's proffered nondiscriminatory reasons for her demotion or discharge are factually false."); *Washington v. Garrett*, 10 F.3d 1421, 1433 (9th Cir. 1993) ("[A]s *St. Mary's* recognizes, the factfinder in a Title VII case is entitled to infer discrimination from plaintiff's proof of a *prima facie* case and showing of pretext without anything more . . . ."). Indeed, *Manzer* states that "[e]very circuit court to address the impact of *Hicks*

---

[15]     Many cases use *Hicks*, rather than *St. Mary's*, as the short form.

on the submissibility of employment discrimination cases has reached this same conclusion." 29 F.3d at 1083. Thus, even if the quoted language in *St. Mary's* were dicta, circuit courts faced with this precise issue since *St. Mary's* have followed this language.

The majority also attempts to discard *St. Mary's* by citing *Hazen Paper Co. v. Biggins*[16] as more binding authority for the resolution of this case. Again, I disagree. Initially, the majority states that: "*St. Mary's* is of course a Title VII case and *Hazen Paper* is an ADEA case. Since the case before us is an ADEA case, we believe that *Hazen Paper* is more relevant and determinative to this decision than *St. Mary's*." *See* slip. op. at 13. The majority's characterization of *St. Mary's* ignores the fact that the ADEA was modeled after Title VII, and the same analysis applies to both statutes.[17] Indeed, *Hazen Paper* itself relies on several Title VII cases.[18] Accordingly, *Hazen Paper* and *St. Mary's* are equally applicable to either a Title VII or an ADEA case.

---

[16]  ___ U.S. ___, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993).

[17]  *See Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 n.4 (5th Cir. 1993) ("The Fifth Circuit . . . has adopted the *St. Mary's* procedural roadmap for ADEA cases."); *see also Fields v. J.C. Penney Co.*, 968 F.2d 533, 536 n.2 (5th Cir. 1992) (referring to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), a Title VII case, as the basis for an ADEA analysis); *Bienkowski v. American Airlines., Inc.*, 851 F.2d 1503, 1504 (5th Cir. 1988) (adapting *McDonnell Douglas* to ADEA context).

[18]  *See* ___ U.S. at ___, 113 S. Ct. at 1706 (relying on, for example, *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 103 S. Ct. 1478, 75 L. Ed. 2d 403 (1983); *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 98 S. Ct. 2943, 57 L. Ed. 2d 957 (1978); *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 97 S. Ct. 1843, 52 L. Ed. 2d 396 (1977); and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), all of which are Title VII cases).

Further, although I agree with the majority's recitation of *Hazen Paper*'s reasoning, I cannot see what relevance it has to this case. In *Hazen Paper*, the plaintiff claimed that his employer's decision to deprive him of his pension by terminating him constituted a violation of the ADEA. The Supreme Court, as the majority correctly states, held that age and years of service are not necessarily correlative, and a finding of intent to thwart the vesting of the plaintiff's pension was not automatically an intent to discriminate on the basis of age. *See Hazen Paper*, ___ U.S. at ___, 113 S. Ct. at 1707 (finding that "age and years of service are analytically distinct"). In this case, however, Rhodes did not seek to prove that, because Guiberson wanted to deprive him of a benefit, Guiberson must have acted discriminatorily. Instead, Rhodes sought to prove that Guiberson discharged him specifically because of his age. In this case, therefore, the correlative jump from some other factor to age discrimination that *Hazen Paper* disallowed is not necessary. Consequently, the holding of *Hazen Paper* does not mandate the majority's conclusion.

Moreover, *Hazen Paper* actually supports the holding in *St. Mary's* that the majority ignores. In *Hazen Paper*, while the Supreme Court held that no *automatic* connection between years of service and age discrimination existed, it also held that years of service could nonetheless support an *inference* of age discrimination. "We do not preclude the possibility that an employer who targets employees with a particular pension status on

35

the assumption that these employees are likely to be older thereby engages in age discrimination." *Id.; see also id.* at \_\_\_, 113 S. Ct. at 1708 ("[I]ndirect evidence of this kind may well suffice to support liability if the plaintiff also shows [pretext].").[19] Thus, *Hazen Paper* is consistent with *St. Mary's* in that, while a conclusion of discrimination is not *required*, it is *permitted*.

## C

Lastly, I question the majority's analysis of post-*St. Mary's* cases. First, as discussed earlier in this dissent, post-*St. Mary's* cases directly dealing with the question at issue in this case follow a different interpretation of *St. Mary's* than that stated by the majority. Also, those cases that the majority cites in support of its conclusion do not, when viewed in their entirety, lend credence to the majority's conclusions.

*Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955 (5th Cir. 1993),[20] and *Durham v. Xerox Corp.*, 18 F.3d 836 (10th Cir. 1994), *cert. denied*, 62 U.S.L.W. 3863 (U.S. Oct. 3, 1994),[21] never reach the question at issue in this case, that is, whether a plaintiff's prima facie case plus proof of pretext alone can suffice to support a factfinder's determination of age discrimination. In both of these cases, the plaintiff failed to prove pretext. *Bodenheimer*,

---

[19]    The Court eventually remanded so that the Court of Appeals could determine if the plaintiff had proved this inference. *Id.* at 1708.

[20]    *See* slip op. at 11.

[21]    *See* slip op. at 12.

5 F.3d at 958 (requiring plaintiff to "produce sufficient evidence to establish that [defendant's] reasons were pretexts *for age discrimination*" and concluding that "he did not"); *Durham*, 18 F.3d at 840 ("Without proof of pretext or direct evidence of discriminatory intent, Durham cannot meet her ultimate burden of proving intentional discrimination."). Thus, neither case reaches the question for which the majority seeks its support. Moreover, *Durham*, in finding lack of pretext, uses the *St. Mary's* language to explain why failure to prove pretext would not *permit* a factfinder to find intentional discrimination. 18 F.3d at 840.[22]

*Mitchell v. Data Gen. Corp.*, 12 F.3d 1310 (4th Cir. 1993), another case cited by the majority,[23] also fails to address the question at issue in this case, because the plaintiff in *Mitchell* failed even to prove a prima facie case. *Id.* at 1317. Consequently, like the previous two cases, *Mitchell* does not lend any additional weight to the majority's reasoning.

Lastly, I question the majority's use of *Anderson v. Baxter Healthcare Corp.*, 13 F.2d 1120 (7th Cir. 1994), in support of its contention that the *St. Mary's* language need not be followed,[24] when *Anderson* expressly adopts that language. After acknowledging that

---

[22]    The majority correctly states that *Durham* cites the *St. Mary's* language, but it neglects to explain the reason why the Tenth Circuit uses that language. *See* slip op. at 12.

[23]    *See* slip op. at 11.

[24]    *See* slip op. at 12-13.

*Hicks* rejected an entitlement to judgment as a matter of law for proof of a prima facie case and pretext, *Anderson* continues:

> The next logical question is whether the plaintiff may prevail, not automatically as a matter of law, but through submission of her case to the ultimate factfinder, under such circumstances [that is, prima facie case plus pretext].
>    *Hicks* answers this question in the affirmative. The Court explicitly states that the plaintiff *may* prevail in a discrimination case by establishing a prima facie case and by showing that the employer's proffered nondiscriminatory reasons for her demotion or discharge are factually false.

13 F.3d at 1123-24.[25] Moreover, *Anderson*'s holding that "even if Anderson had proven that the employer's stated reason, performance, was a pretext, and that plaintiff had been discharged to reduce salary costs, such facts would not establish age discrimination," *see* slip. op. at 12, had nothing to do with the *St. Mary's* standard. Instead, the holding related to the plaintiff's failure to provide proof supporting an inference between salary cost reduction and age discrimination. *Id.* at 1125-26. Thus, the support upon which the majority in this case relies actually undercuts its reasoning and the foundation of its decision.

**IV**

For the reasons stated, I respectfully dissent.

---

[25]    The Seventh Circuit did suggest that although a prima facie case plus pretext would suffice to support a finding of intentional discrimination, "the plaintiff might be well advised to present additional evidence of discrimination, because the factfinder is not *required* to find in her favor simply because she establishes a prima facie case and shows that the employer's proffered reasons are false." *Anderson*, 13 F.3d at 1124. The majority's insistence that Rhodes' case is automatically insufficient without this additional evidence is the fundamental flaw in its rationale that compels me to dissent.