IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-1770

_____

JIMMY G. MOORE,

                    Plaintiff-Appellant,

          versus

ELI LILLY & CO.,

                    Defendant-Appellee.

_____

Appeal from the United States District Court
        for the Northern District of Texas

_____

(April 30, 1993)

Before GOLDBERG, GARWOOD, and WIENER, Circuit Judges.

WIENER, Circuit Judge.

     In this appeal of an age discrimination case,[1] Plaintiff-Appellant Jimmy G. Moore asserts that the district court erred in granting summary judgment in favor of Defendant-Appellee Eli Lilly & Co. (Lilly). Moore argues that the district court improperly imposed a "pretext burden" on him, and that there were genuine issues of material facts concerning whether Lilly's proffered reason for dismissing him was pretextual. Our plenary review of the summary judgment evidence places us in agreement with the district court's grant of summary judgment in favor of Lilly, so we affirm.

_____

     [1] See 29 U.S.C. § 621 et seq.

FACTS AND PROCEDURAL HISTORY

Moore worked for Lilly for over thirty years.  None disputes that during his time with Lilly, Moore had always been a satisfactory salesman.  His employment was terminated by Lilly in October 1990, however, for "falsifying sample records."  At the time of his discharge, Moore was fifty-nine years old.

Lilly, in compliance with the Prescription Drug Marketing Act of 1987,[2] operated a system to track the drug samples distributed to physicians by salespersons.  Under Lilly's system, all salespersons were required to send "call cards" to Lilly each day, reporting the day's distributions of samples to doctors.  Each salesperson's daily reports were checked against an inventory of his or her samples conducted at the end of each quarter.  If the results of the inventory revealed a discrepancy with totals from the salesperson's call cards, he or she was considered to be "out of balance," and the disparity would have to be reconciled.  A salesperson's inability to reconcile a discrepancy could result in his or her 1) being required to submit daily logs, or 2) being terminated.

Moore was out of balance for the second quarter of 1990.  After discussing the discrepancy with Kathy Hagerman, who worked in Lilly's "sample accountability department," Moore sent a letter to that department requesting that his records be altered to reflect a different distribution of samples.  The purpose of this letter

---

[2] See 21 U.S.C. § 353.

was to correct the discrepancy.  It was later discovered that the modified record of samples distribution, as reflected in the letter Moore sent to the sample accountability department, could not have been correct; Moore apparently never had on hand a sufficient supply of samples to make possible the distributions that his letter asserted he had made.[3]  Hagerman informed Moore that the distribution set forth in the letter was not possible in view of the stock he had possessed during the relevant time.  In response, Moore requested that Hagerman return his letter, but she refused.  Lilly terminated Moore's employment, believing that this incident constituted a falsification of company records.

On October, 12, 1990, Moore met with his supervisor, Charles Yelverton.  He informed Moore that his termination was based on falsification of the sample records.  After Moore wrote to Lilly's Board chairman complaining about the termination, two Lilly executives went to Dallas and met with Moore.[4]  As a result of that meeting, Moore's termination date was modified to reflect an effective termination date of December 31, 1990.

Moore filed an age discrimination charge against Lilly with the EEOC.  Before any resolution was made of that charge, though,

---

[3] The discrepancy involved samples of two types of medication:  "Axid 150" and "Axid 300."  In his letter to the sample accountability department, Moore stated that, although his original reports had reflected that he had distributed Axid 150, he had actually distributed Axid 300.  Hagerman later discovered that during the time relevant to the letter, Moore did not have a sufficient quantity of Axid 300 to make the distribution, which was set forth in the letter, possible.

[4] These executives were Thomas Coyne, Director of Personnel, and Dick Wojcik, a Vice-President.

Moore brought the instant action in the district court.  In its opinion, the district court assumed that Moore had made out a prima facie case.  In response, Lilly asserted a non-discriminatory basis for the termination))i.e., the falsification of sample records))which the court found to be legitimate.  Subsequently, the district court granted summary judgment in favor of Lilly, finding that Moore had failed to present any evidence to demonstrate that the legitimate, non-discriminatory reason articulated by Lilly was pretextual.  Moore timely appealed.

## II

## ANALYSIS

A.  Standard of Review

It is well established that, on appeal from a district court's grant of summary judgment, we review the record "under the same standards which guided the district court."[5]  The standards we apply are set out in the Supreme Court trilogy of Anderson v. Liberty Lobby, Inc.,[6] Celotex Corp. v. Catrett,[7] and Matsushita Electric Industrial Co. v. Zenith Radio Corp.[8] Summary judgment is proper when no issue of material fact exists and the moving party

---

[5] Walker v. Sears, Roebuck & Co., 853 F.2d 355, 358 (5th Cir. 1988).

[6] 477 U.S. 242 (1986).

[7] 477 U.S. 317 (1986).

[8] 475 U.S. 574 (1986).

is entitled to judgment as a matter of law.[9]  In determining whether summary judgment was proper, all fact questions are viewed in the light most favorable to the non-movant.  Questions of law are reviewed, as they are in other contexts, de novo.[10]

B.   Shifting Burdens in ADEA Claims

The litany of cases in this court establishing the alternating burdens to be carried by the parties to an age discrimination case, like the litany of those creating our standard of review for grants of summary judgment, is a long and well established one.  As there is no direct evidence of age discrimination in the instant case, "a three step analysis applies."[11]  In the first step, the plaintiff must prove a prima facie case by demonstrating that he or she was (1) discharged; (2) qualified for the position; (3) within the protected age class))over 40))at the time of discharge; and (4) replaced by someone outside of the protected age class))under 40))or was otherwise discharged because of his or her age.[12]

By proving a prima facie case, the employee establishes a rebuttable presumption that the employer unlawfully discriminated against the employee.  The employer may then negate this presumption by articulating a legitimate, non-discriminatory reason

---

[9] FED. R. CIV. P. 56(c); see Celotex, 477 U.S. at 323-25.

[10] Walker, 853 F.2d at 358.

[11] Hanchey v. Energas Co., 925 F.2d 96, 97 (5th Cir. 1990).

[12] Bienkowski v. American Airlines, Inc., 851 F.2d 1503, 1504-05 (5th Cir. 1988).

5

for its action.  If the employer articulates such a reason, and on summary judgment produces sufficient evidence to support the reason thus articulated, "the burden reverts to the plaintiff to prove that the employer's reason[] [is] pretextual."[13]  "The plaintiff can show pretext by introducing evidence which proves that the reason stated by the employer, 'though facially adequate, was untrue as a matter of fact or was, although true, a mere cover or pretext' for illegal discrimination."[14]  Stated another way, the plaintiff may prove pretext by "either showing that a discriminatory reason motivated the defendant or by showing that the proffered reason is unworthy of credence."[15]

To overcome a motion for summary judgment, of course, the plaintiff need only produce evidence to create a genuine issue of material fact concerning pretext.[16]  It is clear, however, that the plaintiff's summary judgment proof must consist of more than "a mere refutation of the employer's legitimate nondiscriminatory reason."[17]  To demonstrate pretext, the plaintiff must do more than

_____

[13] Normand v. Research Inst. of Am., Inc., 927 F.2d 857, 859 (5th Cir. 1991) (citing Thornbrough v. Columbus & Greenville R.R. Co., 760 F.2d 633, 646 (5th Cir. 1985), which cited Texas Dep't of Community Affairs v. Burdine, 450 U.S. at 248, 253-55 (1981)).

[14] Id. (quoting Elliot v. Group Medical & Surgical Servs., 714 F.2d 556, 566 (5th Cir. 1983), cert. denied, 467 U.S. 1215 (1984)).

[15] Hanchey, 925 F.2d at 98.

[16] See FED. R. CIV. P. 52(a).

[17] Bienkowski, 851 F.2d at 1508 n.6 (rejecting the Third Circuit's standard as discussed in Chippollini v. Spencer Gifts, 814 F.2d 893 (3d Cir.1987)).

"cast doubt on whether [the employer] had just cause for its decision"; he or she must "show that a reasonable factfinder could conclude that [the employer's] reason[] [is] unworthy of credence."[18]  Specifically, "[t]here must be some proof that age motivated the employer's action, otherwise the law has been converted from one preventing discrimination because of age to one ensuring dismissals only for just cause to all people over 40."[19]

C.  Moore's Claim of Age Discrimination

The district court assumed that Moore had established a prima facie case of age discrimination.  As Lilly does not contest this point on appeal, and all of the elements are clearly met, we make the same assumption.

Lilly asserted as its legitimate, non-discriminatory reason for Moore's termination that he was discharged because he falsified the records discussed above.  In support of this contention, Lilly presented considerable deposition testimony by Moore and others. It is clear to us, as it was to the district court, that the cognizant executives of Lilly could have reasonably believed that Moore requested the alteration of his sample distribution records without verifying what he had distributed to the doctors.  When he was informed of the impossibility of the distribution under the alteration that he had requested in his letter, he immediately

_____

[18] Hanchey, 925 F.2d at 99.

[19] Bienkowski, 851 F.2d at 1508 n.6 (citing White v. Vathally, 732 F.2d 1037 (1st Cir. 1984)).

7

asked that the letter be returned to him. From these actions Lilly could have reasonably inferred that Moore had something to hide, namely, his falsification of the drug sample records. Such a reasonable belief by Lilly is undeniably a legitimate, non-discriminatory reason for its termination of Moore's employment. The fact that the employers' reasonable belief eventually proves to have been incorrect))if, for example, Moore were eventually to be vindicated from the charges of falsifying records))would not change the conclusion that the firing had been non-discriminatory. To survive summary judgment, therefore, Moore had the burden of producing some evidence that Lilly's proffered explanation is mere pretext. In the language of Hanchey, Moore had to "carr[y] [his] burden of showing a genuine issue of fact regarding the pretext issue."[20] Our review of the summary judgment evidence satisfies us that Moore simply failed to meet this burden.

Moore misapprehends the burden shifting process. At times, he even appears to argue that he has no pretext burden at all. He complains that the trial court improperly ruled that his "prima facie proof was not itself sufficient to raise any inference whatsoever that Moore's age was the motive." Moore thus demonstrates his belief that his prima facie case is sufficient to meet his second evidentiary burden of demonstrating a genuine issue of material fact regarding pretext in order to defeat Lilly's summary judgment motion. This belief in turn demonstrates Moore's failure to grasp fundamental principles of this area of law.

---

[20] Hanchey, 925 F.2d at 98.

Moore cites, inter alia, an Eighth Circuit case, <u>Hicks v. St. Mary's Honor Center</u>,[21] for the proposition that "after 'pretext' has been established," the prima facie case can have an impact on the case in favor of the plaintiff. We agree with our Eighth Ciruit colleagues that if a plaintiff is able to demonstrate that the employer's facially legitimate, non-discriminatory reason for its action is pretext, the inference created by the prima facie case could well be the basis for a favorable verdict for the plaintiff. The plaintiff need not necessarily respond to defendant's non-discriminatory reason if (but only if) plaintiff anticipatorily demonstrated in his or her prima facie case that the reason was pretext.[22] In <u>Hicks</u>, for example, the plaintiff had "proved all of defendants' proffered reasons for adverse employment actions to be pretextual." Following the plaintiffs' discrediting of all of the defendants's proffered reasons for their actions,

> defendants were in a position of having offered no legitmate reasons for their actions. In other words, defendants were in no better position than if they had remained silent, offering no rebuttal to an established inference that they had unlawfully discriminated against plaintiff on [an illegal basis].[23]

Moore's problem, however, is his total failure to produce any evidence of pretext, either in connection with establishing his prima facie case or subsequently in response to Lilly's demonstration of a non-discriminatory reason for its action. He

---

[21] 970 F.2d 487 (8th Cir. 1992).

[22] <u>See id</u>. at 492.

[23] <u>Id</u>. at 492.

protests that the district court imposed on him a new "pretext burden" which the court plucked from the wording of our <u>Hanchey</u> opinion. Not so. The district court was merely requiring Moore to do what all of the relevant case law demands that he do: produce some evidence of pretext.[24]

---

[24] In his brief to this court, Moore argues that "footnote 6 [of the <u>Bienkowski</u> opinion] cannot be read to establish a new 'pretext burden.'" Moore goes on to state that such a burden cannot "be harmonized with <u>Burdine</u>, other Fifth Circuit cases, and the views of other [c]ircuits," and he implies that such a burden would make victory impossible for an ADEA plaintiff.

In the hope of forestalling the unnecessary expenditure of plaintiffs' funds and judicial resources through the filing of flawed age discrimination cases, we have reviewed exhaustively this circuit's published opinions in ADEA cases that are the progeny (since 1988) of <u>Green</u>, <u>Burdine</u>, <u>Thornbrough</u>, or <u>Bienkowski</u>. Our review shows that when an ADEA plaintiff can produce valid evidence of pretext after the employer has proffered a legitimate, non-discriminatory explanation for its action, the plaintiff can succeed. <u>See</u> <u>Ramirez v. Allright Parking El Paso, Inc.</u>, 970 F.2d 1372, 1377 (5th Cir. 1992); <u>Lloyd v. Georgia Gulf Corp.</u>, 961 F.2d 1190, 1194,95 (5th Cir. 1992); <u>Walther v. Lone Star Gas Co.</u>, 952 F.2d 119, 122-24 (5th Cir. 1992); <u>Wilson v. Monarch Paper Co.</u>, 939 F.2d 1138, 1146-47 (5th Cir. 1991); <u>Normand Research Inst. of Am., Inc.</u>, 927 F.2d 857, 862-64 (5th Cir. 1991); <u>Young v. City of Houston</u>, 906 F.2d 177, 182 (5th Cir. 1990); <u>Deloach v. Delchamps, Inc.</u>, 897 F.2d 815, 818-19 (5th Cir. 1990); <u>Burns v. Texas City Refining, Inc.</u>, 890 F.2d 747, 749-51 (5th Cir. 1989); <u>Hansard v. Pepsi Cola Metro Bottling Co.</u>, 865 F.2d 1461, 1465-66 (5th Cir 1989); <u>Uffelman v. Lone Star Steel Co.</u>, 863 F.2d 404, 407-08 (5th Cir. 1989). In a smaller but significant number of cases, to which the instant case may be added, ADEA plaintiffs who fail to meet their burden to produce some valid evidence of pretext are unsuccessful. <u>See</u> <u>Waggoner v. City of Garland</u>, __ F.2d __, 1993 WL 81530 (5th Cir.)(affirming the grant of summary judgment in favor of defendant); <u>Guthrie v. Tifco Indus.</u>, 941 F.2d 374, 378 (5th Cir. 1991)(same); <u>Amburgey v. Corhart Refractories Corp.</u>, 936 F.2d 805, 813-14 (5th Cir. 1991)(same); <u>Hanchey v. Energas Co.</u>, 925 F.2d 96, 98-99 (5th Cir. 1990)(same); <u>Little v. Republic Refining Co.</u>, 924 F.2d 93, 96-98 (5th Cir. 1991)(affirming grant of JNOV in favor of defendant); <u>Molnar v. Ebasco Constructors, Inc.</u>, 986 F.2d 115, 1993 WL 59042, *3 (5th Cir.)(reversing jury verdict that had been rendered in favor of plaintiff); <u>Laurence v. Chevron, U.S.A., Inc.</u>, 885 F.2d 280, 284-85 (5th Cir. 1989)(same). A fair reading of the latter set of cases reveals

10

Moore attempts, in two assertions, to produce satisfactory evidence that Lilly's reason for his termination was pretext: (1) that a series of comments made by his supervisor, Yelverton, demonstrated discriminatory intent in connection with Moore's termination, and (2) that certain irregularities in the procedures followed by Lilly in connection with Moore's termination demonstrate discriminatory intent. As we shall explain, however, none of Moore's evidence establishes a sufficient nexus between his age and his termination to create a genuine issue of material fact concerning pretext. It cannot therefore defeat Lilly's motion for summary judgment.

1. Yelverton's Comments

Moore asserts that a number of comments made by his supervisor demonstrates that he had a bias against older workers in general, and Moore in particular. Phrased in the vernacular of our prior opinions, Moore is asserting that even if Lilly's stated reason is facially valid, it is "a mere cover or pretext for illegal discrimination"))i.e., that "a discriminatory reason motivated [Lilly]."[25] Moore submits that his termination was a product of the

---

that the most prevalent flaw in the losing plaintiffs' evidence is the absence of proof of nexus between the firing (or failure to promote) and the allegedly discriminatory acts of the employer. In our survey, we found only two ADEA cases in which the plaintiff failed to produce evidence sufficient to make out a prima facie case. See Fields v. J.C. Penny Co., 968 F.2d 533, 536 (5th Cir. 1992); Crum v. American Airlines, Inc., 946 F.2d 423, 428-29 (5th Cir. 1991).

[25] See supra notes 14-15 and accompanying text.

discriminatory intent evidenced by Yelverton's remarks and was not a product of the drug record falsification reason given by Lilly. Not only do the statements that Moore attributes to Yelverton fail directly to refute Lilly's explanation of Moore's termination as pretextual, they fail to demonstrate discriminatory intent vel non.

Moore asserts that when Yelverton learned that he was going to become the supervisor of the division in which Moore worked, Yelverton asked the outgoing supervisor a series of questions concerning the ages of the current employees and whether any of the older employees planned to retire soon.[26] These questions, however, cannot be said to represent, as Moore asserts, a discriminatory intent by Yelverton. Without more, they merely demonstrate a new supervisor's reasonable inquiries about the ages of the members of his work force and their known plans for the future))facts on which to guage the anticipated longevity of his crew.[27]

The other set of statements that Moore proffers as proof of discriminatory intent concerning his termination are two more

---

[26] The former supervisor stated in a deposition that Yelverton specifically asked about Moore's retirement plans when he learned of Moore's age.

[27] In Burns v. Texas City Refining, 890 F.2d at 750-51, we found that the plaintiff had demonstrated pretext, and one part of his proffered evidence consisted of a supervisor's inquiry concerning plaintiff's age. In Burns, however, the inquiry, which itself did not demonstrate discriminatory animus, was accompanied by the fact that the supervisor knew of savings in pension payments that could be realized if older workers were dismissed, and that specific efforts had been made to induce Burns to leave before his termination. See id. In the instant case, however, there is nothing more than an inquiry by a new supervisor concerning the age of his workforce. We cannot infer discriminatory animus from that inquiry.

Yelverton remarks that simply do not have any negative implications about Moore or his age. The first was a comment made by Yelverton when the he and Moore were on a sales call together. Yelverton stated that if he were in Moore's position he would be out seeing the world. Such musings about eventual retirement simply do not evidence discriminatory intent. Neither do tasteless but innocuous "pottie humor" comments, such as one made by Yelverton to Moore.[28]

Moore adds that he was told by other Lilly supervisors not to recommend people over thirty-five years of age for new sales positions. The implication of that advice))that Lilly wanted to make training investments in employees of an age that would predict long range employment))is not indicative of age bias and certainly did not affect Moore, who long before had been hired as a salesman. Moore also stated in a deposition that he was the oldest man in the district office. But again, the fact that the oldest employee in the district was terminated simply does not demonstrate that the facially age-neutral reason Lilly offered for that termination was pretextual.[29]

2. The Circumstances of Moore's Termination

Moore next claims that "the pretextual nature of Lilly's

---

[28] Specifically, when Yelverton and Moore were in a restroom at the same time, Yelverton stated that Moore "had a strong stream for an old man." Although this comment demonstrates that Yelverton might have been less than genteel at times, it fails to demonstrate discriminatory animus.

[29] Moore also insists that "a substantial raise was in the works [for him] and . . . that this led to Yelverton's sense of urgency in terminating him." Assuming that this is true, we fail to see any relation whatsoever to Moore's age.

alleged reason for termination is obvious" from the facts surrounding his termination. With this argument, Moore continues his attempt to create a genuine issue of material fact regarding Lilly's stated reason, insisting that it is "a mere cover or pretext for illegal discrimination" or that "a discriminatory reason motivated [Lilly]."[30]

Moore argues that six facts surrounding his termination (noting that "the list could easily be continued") demonstrate Lilly's discriminatory intent. These facts, which for purposes of this review we assume to be true, are: (1) that Lilly has told inconsistent stories concerning the termination; (2) that Moore was terminated for "falsifying records" before Yelverton knew the elements of the offense; (3) that Yelverton varied Lilly's discharge procedures and disobeyed orders from his supervisors in deciding to terminate Moore; (4) that "Moore was terminated for attempting to correct a situation caused by someone else's mistake"; (5) that the sample accountability department only placed him on the daily log (a lesser penalty) but Yelverton decided to terminate him; and (6) that Yelverton "shot first and asked questions later"))making his inquiry only after he terminated Moore. Concerning these six assertions, the district court stated: "While these conflicting accounts indicate a factual dispute as to exactly how Moore was terminated, their existence does not provide direct (or even indirect) proof that he was fired because of age." We agree.

---

[30] See supra notes 14-15, 23 and accompanying text.

14

Proof that an employer did not follow correct or standard procedures in the termination or demotion of an employee may well serve as the basis for a wrongful discharge action under state law. As we have stated, however, the ADEA was not created to redress wrongful discharge simply because the terminated worker is was over the age of forty.[31] A discharge may well be unfair or even unlawful yet not be evidence of age bias under the ADEA. To make out an ADEA claim, the plaintiff must establish the existence of discrete facts that show some nexus between the employment actions taken by the employer and the employee's age. Here, there is no demonstrated connection other than Moore's bald assertion that one exists. That simply will not suffice.

III

CONCLUSION

Moore, like so many other ADEA claimants before him, has failed to produce summary judgment evidence capable of showing the existence of a genuine issue of material fact on the pretext issue. Agreeing with the district court's well-reasoned opinion that explain the court's grant of Lilly's motion for summary judgment, we
AFFIRM.

---

[31] See Bienkowski, 851 F.2d at 1508 n.6.

15