IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 99-10604
Summary Calendar
_____

DAN M WEBSTER,

Plaintiff-Appellant,

v.

TEXAS ENGINEERING EXTENSION SERVICE,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas
Docket No. 3:97-CV-2505-L
_____

December 14, 1999

Before KING, Chief Judge, and JOLLY and PARKER, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Dan M. Webster appeals the district
court's entry of summary judgment in favor of Defendant-Appellee
Texas Engineering Extension Service.  For the reasons stated
below, we AFFIRM.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff-Appellant Dan M. Webster ("Webster") filed this

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

action asserting violations of the Americans with Disabilities Act ("ADA") and the Age Discrimination in Employment Act ("ADEA") against Defendant-Appellee Texas Engineering Extension Services ("TEEX") after he was terminated from his position as an instructor in TEEX's Management and Leadership Development Training Division.  TEEX is a program affiliated with Texas A & M University.  It is headquartered in College Station, Texas but has offices throughout the state.  Webster's division offered classes to clients in both the public and private sectors.  Those classes covered management topics such as situational leadership, customer service, time management, and team building.

Although TEEX is a state entity, it is responsible for raising 90% of its operating budget.  Funds were raised, in part, by selling its instructional services.  TEEX instructors, including Webster, were responsible for signing-up new clients and generating revenue.  In 1996, TEEX began to encounter substantial competition from private sector sources.  In response, TEEX implemented a number of measures in an attempt to improve revenue and lower costs.  Those measures included the implementation of "financial objectives" for each instructor. The objectives set a certain amount of revenue each instructor was expected to generate.

In late May 1996 Webster and another instructor, Carl Schwab ("Schwab"), met with the head of the division, Dr. Milton Radke ("Radke").  Radke informed both men that they were not on track to meet their financial projections and that their jobs would be

2

eliminated if their performance failed to improve. By August 1996, neither Schwab nor Webster was meeting his projection, and both men were placed on half-time status. TEEX's revenue continued to decline, and by December 1996 TEEX realized that a reduction in workforce would be necessary to save the financially struggling program.

In early January 1997 Webster told Radke that his performance had improved and that he had met Radke's requirement of generating approximately $5,000 in business a month over the last three months. Radke represented to Webster that, if this was true, Webster would be returned to full-time status. Radke later learned that Webster had misrepresented his progress.[1]

On January 16, 1997, Webster suffered a grand mal seizure. After being transported to the hospital, Webster was diagnosed as suffering from epilepsy. The January seizure was the first grand mal seizure Webster had ever suffered, although previous episodes of dizziness he had experienced were diagnosed as petit mal seizures consistent with epilepsy. Webster was placed on anti-convulsant medication, instructed not to drive for thirty days, and discharged from the hospital the same day. Webster's doctor also recommended that he not work near water, in high places, or be the sole caretaker of children. Although Webster was unable to drive, he informed Radke that he would work from home. During

---

[1] It appears that while Webster did generate over $15,000 in business in three months, he did not consistently generate $5,000+ a month for three months. Rather, Webster generated $300 in October, $3,955 in November, and $10,836 in December.

3

the period between his seizure and his dismissal from TEEX, Webster continued to work and had his wife or son-in-law drive him when he needed to travel on business. On January 30, 1997, Radke presented Webster with a letter stating that his position was being eliminated and that he would no longer be employed by TEEX.[2] Since being terminated, Webster has apparently not suffered another grand mal seizure though he has continued to experience petit mal seizures as evidenced though periodic episodes of dizziness.

After Webster was discharged, Schwab, who earned a lower salary than Webster and was expected to generate more revenue, was returned to full-time status. Despite these cost-saving measures the division continued to struggle financially. In September 1997 Schwab and the remaining employees of TEEX's Management and Leadership Training Division were terminated and the division was closed.

Webster's complaint alleged that his termination violated both the ADA and the ADEA. The district court granted summary judgment in favor of TEEX on Webster's ADA claim because it found

---

[2] The precise date on which the decision was made to terminate Webster is an issue of some debate. TEEX claims that it performed evaluations of Webster, Schwab, and another TEEX employee on January 10, 1996, and that Webster scored lowest on these evaluations and was therefore terminated. Webster argues that the decision to terminate him was not made until after his seizure and that TEEX went back and created a paper trail to cover-up its illegal discrimination. Because we find that Webster has failed to establish he is disabled under the ADA, we need not determine the precise date on which the decision to terminate Webster was made.

4

that Webster failed to show he is disabled.  The court further held that, even if Webster was disabled, he had failed to show that the non-discriminatory reasons proffered by TEEX for dismissing him were mere pretext for unlawful discrimination.

The district court also granted summary judgment in favor of TEEX on Webster's ADEA claim.  The court found that, although Webster made out a prima facie ADEA claim, TEEX had come forward with legitimate, non-discriminatory reasons for dismissing him.  The court found that Webster failed to set forth any "discrete facts" showing a causal nexus between his age and TEEX's decision to dismiss him.  Because Webster had failed to raise any genuine issues of material fact regarding his termination, the court granted summary judgment in favor of TEEX.

DISCUSSION

This court reviews a grant of summary judgment de novo, applying the same standards as the court below.  See Matagorda County v. Law, 19 F.3d 215, 217 (5th Cir. 1994).  Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Fed.R.Civ.P. 56(c).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could find in favor of the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  If the moving party meets the initial burden of establishing that there is no genuine

5

issue, the burden shifts to the nonmoving party to produce evidence of the existence of a genuine issue for trial.  See Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  The nonmovant cannot satisfy his summary judgment burden with conclusory allegations, unsubstantiated assertions, or mere scintillas of evidence.  See id.

Viewing all inferences in a light most favorable to Webster, as we must under Matsushita Electrical Industries Company v. Zenith Radio, 475 U.S. 574 587 (1986), we find that he has not presented any genuine issues of material fact.  As will be discussed below, we find that Webster has failed to present a prima facie ADA claim because he can not show that he is disabled.  And while Webster has presented a prima facie ADEA claim, he has failed to demonstrate that TEEX's proffered legitimate, non-discriminatory reasons for terminating him were mere pretext for unlawful discrimination.  We address each of Webster's claims in turn.

**1. Webster's ADA Claim**

Webster alleges that TEEX violated the ADA when it terminated him.  To establish a prima facie case under the ADA, Webster must show that: 1) he is disabled as defined by the ADA, 2) he is otherwise qualified for the job, and 3) he was fired because of his disability.  See Talk v. Delta Airlines, Inc., 165 F.3d 1021, 1024 (5th Cir. 1999).  A person is disabled under the ADA if they 1) have a physical or mental impairment that

substantially limits one or more major life activities, or 2) have record of such impairment, or 3) are regarded as having such an impairment. 42 U.S.C. §12102(2). Webster argues that he has an impairment that substantially limits a major life activity and that TEEX regarded him as having such an impairment.

### a. Does Webster Have an Impairment that Substantially Limits a Major Life Activity?

TEEX concedes that Wester's epilepsy constitutes a physical impairment. The debate between the parties revolves around whether this impairment substantially limits a major life activity. Major life activities can include "functions such as caring for onself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). A person is "substantially limited" if they are unable to perform a major life activity that can be performed by the average person in the general population or they are significantly restricted as to the time, place, condition, duration, or manner under which they can perform the activity. See 29 C.F.R. § 1630.2(j)(1). Webster claims that his epilepsy substantially limits him in the major life activity of working.

A person is substantially limited in the major life activity of working if they are unable to perform "either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not

7

constitute a substantial limitation in the major life activity of working." <u>Talk</u> 165 F.3d at 1025 (citing 29 C.F.R. § 1630.2(j)(3)(i)). We agree with the district court that Webster has failed to show that he is substantially limited in the major life activity of working.

The affidavit submitted by Webster's doctor indicated that Webster was able to work as a management trainer for TEEX. The only restrictions placed on Webster (no working in high places, near water, or with children) exclude him only from a narrow category of jobs and do not render him unable to work. Webster admitted that he was able to, and did, work after having the seizure. Moreover, the four-week prohibition from driving did not impair Webster's ability to work. We have noted in cases dealing with the Rehabilitation Act, <u>see</u> 28 U.S.C. §701,[3] that the law contemplates an impairment "of a continuing nature," and not simply a temporary restriction. <u>Evans v. City of Dallas</u>, 861 F.2d 846, 853 (5th Cir. 1988) (citations omitted). Therefore, we decline to consider Webster's four-week driving prohibition when determining whether he is substantially limited in the major life activity of working. Webster has failed to set forth any evidence showing that he is substantially limited in the major

---

[3] The definition of an individual with a disability under the ADA is identical to the Rehabilitation Act's definition of an individual with a "handicap." <u>Compare</u> 42 U.S.C. § 12102 <u>with</u> 29 U.S.C. §706(8)(B). The Rehabilitation Act is regarded as the predecessor to the ADA and cases interpreting it are considered relevant in ADA cases. <u>See</u> <u>Zenor v. El Paso Healthcare Sys., Ltd.</u>, 176 F.3d 847, 854 n.2 (5th Cir. 1999).

life activity of working.

**b. Was Webster Regarded by TEEX as Having an Impairment that Substantially Limits a Major Life Activity?**

Webster also alleges that officials at TEEX regarded him as having a physical impairment that substantially limited a major life activity and therefore he was disabled as defined by the ADA. Webster fails to present evidence showing that TEEX regarded him as disabled. The Supreme Court has recently stated that there are two ways an individual "may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." Sutton v. United Air Lines, Inc. 119 S. Ct. 2139, 2149-50 (1999).

Webster has failed to submit evidence that raises a factual question regarding TEEX's perception of Webster's impairment. Webster admits that he never told any of his co-workers about his petit mal seizures (the dizzy spells), and he presents no evidence indicating that anyone at TEEX who had the authority to make employment decisions was aware of Webster's condition prior to his grand mal seizure.

Webster claims that Radke was aware that Webster had suffered a grand mal seizure within two days after it occurred. Viewing Webster's allegation as true, this still fails to raise a

9

fact question as to whether Radke regarded Webster as substantially limited in working.  The fact that Radke was aware that Webster suffered a seizure, standing alone, does not show that he believed Webster was substantially limited in his ability to work.

The Supreme Court has held that for an employer to regard an employee as substantially limited in a major life activity, and thus disabled, "it is necessary that [the employer] entertain misperceptions about the individual."  <u>Sutton</u>, 119 S. Ct. at 2150.  The Court noted that these "misperceptions" oftentimes "'resul[t] from stereotypic assumptions not truly indicative of...individual ability.'"  <u>Id.</u> (citing 42 U.S.C. §2101(7)).  Webster has failed to come forward with any evidence indicating that Radke, or TEEX, believed that Webster was unable to perform his job because of his seizure.  Webster's evidence only indicates that Radke knew Webster had suffered a seizure and that Radke apparently allowed Webster to work at home, not that Radke perceived him to be substantially limited in his ability to work.  We conclude that the district court correctly determined that Webster failed to show he is disabled under the ADA.

**2. Webster's ADEA Claim.**

To make a prima facie showing under the ADEA, Webster must show that he was terminated from his job, that he was qualified for his position, that he was over forty years old when he was fired, and that he was replaced by someone younger.  <u>See</u> <u>Brown v.</u>

10

CSC Logic, Inc., 82 F.3d 651, 654 (5th Cir. 1996).  TEEX admits that Webster has made out a prima facie case under the ADEA.

Once Webster proved his prima facie case, he established a rebuttable presumption that he was discriminated against by TEEX because of his age.  See Moore v. Eli Lilly & Co., 990 F.2d 812, 815 (5th Cir. 1993).  This presumption can be rebutted by TEEX if it can "articulate a legitimate, non-discriminatory reason" for firing Webster.  Id.  TEEX may meet this burden by setting forth evidence that, "if believed by the trier of fact would support a finding that unlawful discrimination was not the cause of the employment action."  Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 993 (5th Cir. 1996) (en banc) (citing St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993)).  If TEEX produces such evidence, the burden is shifted back to Webster to show that TEEX's stated reasons are mere pretext for otherwise unlawful discrimination. See Moore, 990 F.2d at 812.

We find that TEEX presented sufficient evidence showing that its decision to terminate Webster was motivated by legitimate, non-discriminatory reasons.  To withstand a motion for summary judgment after TEEX carries its burden, Webster must submit evidence creating a genuine issue of fact concerning pretext. See id. at 815.  This proof must "consist of more than a mere refutation of the employer's legitimate nondiscriminatory reason" but must offer "some proof that age motivated the employer's action."  Id. at 815-16 (citations omitted).

We agree with the district court that Webster failed to come

11

forward with evidence raising a genuine issue of fact concerning pretext.  TEEX raised a number of legitimate, non-discriminatory reasons for dismissing Webster, including his poor performance and the general financial strain on the division.  Webster cost more to employ, and generated less income for the division, than other TEEX employees.  Webster failed to present any evidence demonstrating a causal nexus between his age and the decision to terminate him.  Webster asserts that TEEX's proffered reasons for dismissing him were pretext for unlawful discrimination, but he offers no evidence in support of this proposition.  Webster merely argues that he was a better employee than Schwab and TEEX should have chosen to terminate Schwab instead of him.  "The ADEA was not intended to be a vehicle for judicial second guessing of employment decisions, nor was it intended to transform the courts into personnel mangers."  Bienkowski v. American Airlines, Inc., 851 F.2d 1503, 1507-08 (5th Cir. 1988) (citations omitted).  While Webster's evidence may indicate that TEEX made an unwise business decision in choosing to terminate him, rather than a different employee, it does not demonstrate any causal links between Webster's age and TEEX's decision.

CONCLUSION

Webster has failed to come forward with any genuine issues of material fact.  He is not disabled under the ADA and he failed to introduce evidence showing that TEEX's legitimate, non-discriminatory reasons for terminating him were mere pretext for

12

unlawful age discrimination.  For these reasons, the district court was correct in granting TEEX's motion for summary judgment and we therefore AFFIRM.