# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 5, 2025

Lyle W. Cayce
Clerk

———————

No. 24-11043

———————

Kayode Sotonwa, *Doctor*,

*Plaintiff—Appellant*,

*versus*

Douglas A. Collins, *Secretary, U.S. Department of Veterans Affairs*,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 1:22-CV-189

_____

Before Stewart, Clement, and Wilson, *Circuit Judges*.

Per Curiam:[*]

Kayode Sotonwa filed suit in federal district court against his employer, the U.S. Department of Veterans Affairs ("VA"), alleging discrimination, harassment, and retaliation claims under Title VII of the Civil Rights Act and the Age Discrimination in Employment Act ("ADEA"). *See* 42 U.S.C. § 2000e–16; 29 U.S.C. § 621. The district court granted summary judgment in favor of the VA on all claims. Sotonwa appealed the district

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-11043

court's judgment as to his Title VII discrimination and retaliation claims only. For the following reasons, we AFFIRM.

## I. FACTUAL & PROCEDURAL BACKGROUND

In August 2013, Sotonwa, a Black male physician of Nigerian national origin over the age of forty, was promoted to Associate Chief of Staff of Ambulatory Services at the West Texas VA Health Care System in Big Springs, Texas ("WTVA"). As an Associate Chief of Staff, Sotonwa reported to various acting or interim Chiefs of Staff between 2013 and 2018.[1] Chiefs of Staff, who are second-in-command, report to the Director, who is in the top leadership position at the WTVA.

Beginning in 2014, shortly after Sotonwa was promoted, he was counseled on more than one occasion by various Chiefs of Staff about his "below-expectation" leadership skills, interactions, and communications with fellow Associate Chiefs of Staff and other WTVA employees.

In 2017, Sotonwa filed an Equal Employment Opportunity ("EEO") complaint alleging that a co-worker received a larger bonus than he did. Although she was not specifically named in his complaint, Kalautie JangDhari, then-Director of the WTVA, was notified of Sotonwa's claim by letter per routine WTVA procedure.

As Associate Chief of Staff, Sotonwa's job duties included conducting physical examinations of various employees that were required to undergo physical-fitness inquiries pursuant to VA policies. In January 2018, two female employees filed sexual harassment complaints against Sotonwa with the VA's internal police, claiming that his physical-fitness examinations were

_____

[1] According to the record, because the WTVA served a rural area, it had difficulty retaining permanent leadership staff, resulting in several different employees serving as acting or interim Chiefs of Staff during the time-period relevant to these proceedings.

inappropriate. When JangDhari was informed of the complaints, she arranged for an Administrative Investigation Board ("AIB") to investigate whether Sotonwa had engaged in either sexual or non-sexual harassment towards other WTVA employees. The AIB was comprised of the following four individuals, all of whom were employed outside of the WTVA and did not have a personal relationship with Sotonwa: (1) the Chair, a physician who was Chief of Compensation & Pension from the South Texas VA Health Care System; (2) an Associate Chief of Staff from Houston; (3) the Director of Occupational Health in Minneapolis; and (4) a Registered Nurse from the regional office for the West Texas facility.

In March 2018, Sotonwa was reassigned by the then-Interim Chief of Staff, Nasir Hussain, to the position of Staff Physician pending the outcome of the AIB's investigation. Hussain advised Sotonwa that his reassignment during the pendency of the AIB investigation was a standard, non-disciplinary procedure that was intended to protect all parties involved.

The AIB was directed to investigate whether Sotonwa (1) "[f]ail[ed] to follow policy/procedures during an employee physical" or (2) "[c]reat[ed] a hostile work environment for peers and subordinates involving but not limited to sexual harassment and discrimination during an examination." After completing a two-month investigation which included formal interviews of over 20 individuals, many of whom were WTVA employees, the AIB issued a report in May 2018 concluding that Sotonwa's physical examinations of the two female employees were "inappropriate" and "more thorough than necessary," but did not constitute sexual harassment. Nevertheless, the results of the AIB's investigation also indicated that Sotonwa and his leadership style had been described by his colleagues as "gruff, hard handed, a bully, autocratic, arrogant, abrasive, ugly, dictatorial and demeaning." Sotonwa's colleagues further testified that they felt that Sotonwa spoke to his subordinates in a demeaning tone and that

they believed that many employees had left the WTVA because of Sotonwa. Based on the evidence gathered, the AIB determined that Sotonwa's "lack of emotional intelligence ha[d] created an uncomfortable working relationship with many of the employees at [the WTVA]." The board also explained that Sotonwa "appears to deflect any criticism concerning himself and attributes it to the characteristics or traits of those around him[.]"

The AIB then recommended that Sotonwa "undergo sensitivity training so that he is more aware of how perceptions of his past affect those around him and how his actions and words affect others." It explained that he "needs to be more aware of invading personal space and touching sensitive areas due to the wide[-]spread knowledge of his past and perceptions of past allegations." It further recommended that Sotonwa "receive leadership training if he remains in a supervisory position [because h]e appears to lack the skills necessary at this time to exemplify [the] VA's goal of Servant Leadership."

In April 2018, while the AIB's investigation into Sotonwa's conduct was pending, Jeffrey Hastings became the Acting Chief of Staff at the WTVA. A week after Hastings began working at the WTVA, the AIB issued its report with its conclusions pertaining to its investigations of Sotonwa's conduct. Although Hastings read the AIB's report, he stated that he did not feel comfortable taking action in response to the report until he had an opportunity to get to know the staff and have direct discussions with them to assess how they interacted with each other. Three months later, Hastings recommended to JangDhari that Sotonwa be permanently demoted from his Associate Chief of Staff position to Staff Physician. Hastings supported his recommendation with a detailed memorandum that described the basis for his decision and the evidence that he had considered which included the AIB's report. Hastings further explained:

4

[T]he AIB had found that Dr. Sotonwa's leadership skills and mannerisms created an uncomfortable working relationship with staff and some beneficiaries . . . . Although he had been counseled and mentored by various personnel, there had not been any improvement in his leadership style. Those deficiencies violated VA policies and its mission.

…

Given these leadership deficiencies, the evidence I reviewed and considered demonstrated that Dr. Sotonwa was not, at that time, qualified for the position of Associate Chief of Staff, Ambulatory Care at the West Texas VA. Accordingly, I issued a proposed demotion, dated August 21, 2018. (App'x 101102.) I charged Dr. Sotonwa with conduct unbecoming an employee because his actions had contributed to the establishment of a hostile work environment.

…

My decision to propose demoting Dr. Sotonwa was not based on Dr. Sotonwa's race, color, national origin, or gender. I am over the age of 40, and I did not base my decision to recommend his demotion based on his age.

I had no knowledge of any protected activity by Dr. Sotonwa at the time I proposed his demotion.

On September 13, 2018, after reviewing the AIB's report and evidence file, Hastings's proposal to demote Sotonwa, Sotonwa's written rebuttal to Hastings's demotion proposal, and meeting with Sotonwa and his attorney, JangDhari demoted Sotonwa to the position of Staff Physician. JangDhari, who is female, over the age of forty, and of Indian national origin, explained that she was not aware of any EEO complaints filed against her at the time of her decision, and she did not demote Sotonwa with any intent to harass or discriminate against him. When Sotonwa was formally demoted, D'Arcie

Chitwood, who is a forty-year-old,[2] Caucasian female, was temporarily assigned to take over his position as Acting Associate Chief of Staff of Ambulatory Care. Then in June 2019, Luis Chavez, a Hispanic male over the age of forty, was appointed to Sotonwa's former position of Associate Chief of Staff of Ambulatory Care.

After he was demoted, Sotonwa filed an administrative EEO complaint wherein he alleged that:

> As associate [chief of staff], the VA has subjected Dr. Sotonwa to a series of discriminatory and retaliatory actions based on his race, color and/or national origin, when he was denied opportunities to act or otherwise serve in roles which are vital to his promotional opportunities while a person not in his protected class was given the opportunities although unqualified by education and experience. After Dr. Sotonwa filed in good faith legitimate complaints about discriminatory treatment, he was subjected to [a] merit-less investigation of allegations of sexual harassment and a later allegation of bullying which was used as a pretext [] to demote him from his position as associate chief of staff to position of staff physician.

The VA moved for summary judgment before the administrative judge, arguing that Sotonwa was demoted based on the facts and evidence developed during the AIB's investigation and Hastings's and JangDhari's subsequent review of that evidence. The VA further contended that the decision to demote Sotonwa was not retaliatory because Hastings was not employed with the WTVA during Sotonwa's prior EEO activity and JangDhari testified that she did not recall or base her decision on Sotonwa's prior EEO activity. The administrative judge granted summary judgment in

---

[2] According to the record, Chitwood served in this position from March 2018 until June 2019. She was over forty years of age as of June 2019.

favor of the VA, explaining that she agreed "in all material respects with the Agency's articulation of the undisputed facts and legal analysis [resulting in] no genuine issues of material fact to be resolved at hearing."

After the final order was issued in the administrative case, Sotonwa filed suit in federal district court in December 2022. In his complaint, Sotonwa alleged that: (1) the VA "failed and refused to appoint [Sotonwa] to an acting position on account of his race, color and national origin in violation of § 703(a)(1) and (2) and § 717(a) of Title VII, 42 U.S.C. in §§ 2000e-2(a)(1) and (2), and 16(a)"; (2) the VA "subjected [Sotonwa] to an unmerited fact-finding investigation and otherwise harassed [him] on account of his race, color and national origin and in retaliation for protected activity"; and (3) the VA "demoted [Sotonwa] on account of his race, color and national origin and in retaliation for protected activity."

The VA initially moved for partial summary judgment on Sotonwa's first claim that he was discriminated against when he was not appointed to Acting Chief of Staff. The district court granted partial summary judgment in favor of the VA on this claim on grounds that Sotonwa had failed to exhaust his administrative remedies.

The VA then filed a second motion for summary judgment on Sotonwa's remaining two claims. In its motion and supporting memorandum, the VA argued that: (1) Sotonwa had failed, through probative evidence, to establish his discrimination claims based on race, color, national origin, gender or age; (2) he had failed to establish a hostile work environment claim; and (3) he had presented no probative evidence to establish a *prima facie* case of retaliation for engaging in protected activity. Sotonwa responded to the motion and the VA replied.

In October 2024, the district court granted the VA's second summary judgment motion in full. In its memorandum opinion, the district court

assumed without deciding that Sotonwa had established *prima facie* cases of discrimination and retaliation, but nevertheless held that he had failed to present evidence that created a genuine issue of material fact as to whether the VA's proffered reasons for the investigation into his conduct and his eventual demotion were pretextual for discrimination or retaliation.[3] Sotonwa filed this appeal.

## II. JURISDICTION & STANDARD OF REVIEW

Sotonwa alleges violations of federal employment law, so the district court had jurisdiction over his claims under 28 U.S.C. § 1331. We have appellate jurisdiction to review the district court's final judgment under 28 U.S.C. § 1291.

We conduct a de novo review of a district court's grant of summary judgment. *Sanders v. Christwood*, 970 F.3d 558, 561 (5th Cir. 2020). "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting FED. R. CIV. P. 56(a)). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A plaintiff's subjective beliefs, conclusory allegations, speculation, or unsubstantiated assertions are insufficient to survive summary judgment. *See Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011); *Clark v. Am.'s Favorite Chicken Co.*, 110

---

[3] The district court further held that Sotonwa had failed to establish a *prima facie* case for harassment that constituted a hostile work environment because he failed to establish that the alleged harassment was severe or pervasive, or that he was harassed because of his race, color, national origin, age, or in retaliation for engaging in a protected activity. Sotonwa does not appeal the district court's dismissal of his harassment/hostile work environment claim, nor does he appeal the district court's dismissal of his ADEA claim.

F.3d 295, 297 (5th Cir. 1997); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "A panel may affirm summary judgment on any ground supported by the record, even if it is different from that relied on by the district court." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 438 (5th Cir. 2012) (internal quotation marks and citation omitted).

## III. DISCUSSION

On appeal, Sotonwa argues that the district court erred in granting summary judgment in favor of the VA on his claims for Title VII discrimination and retaliation. We address each of his arguments in turn.

### A. Discrimination

According to Sotonwa, the district court erred in granting summary judgment in favor of the VA because he established a *prima facie* case of discrimination, and the VA failed to meet its burden of articulating a legitimate, nondiscriminatory reason for his demotion. Sotonwa further contends that, even if the VA met its burden of production, he produced "substantial evidence" that the VA's proffered legitimate, nondiscriminatory reason for his demotion was pretextual. We disagree.

Under Title VII, it is unlawful to discriminate against an employee "on the basis of race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–16. "A plaintiff may use either direct or circumstantial evidence to prove a case of intentional discrimination." *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 328 (5th Cir. 1994) (citing *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 n.3 (1983)). "Direct evidence," in this context, "is evidence which, if believed, proves the fact of intentional discrimination without inference or presumption." *Id.* at 328–29 (cleaned

up). We analyze Title VII claims that depend on circumstantial evidence[4]—as Sotonwa's does here—under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

To survive summary judgment, Sotonwa must raise a "genuine dispute as to any material fact" that the VA discriminated against him. FED. R. CIV. P. 56(a); *see also Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001). To that end, we first assess whether Sotonwa has established a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. To establish a *prima facie* case, a plaintiff must show that he "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam) (citing *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005)).

If the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant to "produce evidence that the plaintiff was rejected for a legitimate, nondiscriminatory reason." *Okoye*, 245 F.3d at 512 (cleaned up). To meet this burden, the defendant "must provide both clear and reasonably specific reasons for its actions." *Id.* at 513 (internal quotation marks omitted). If the defendant is successful in producing a legitimate, nondiscriminatory reason, the plaintiff's *prima facie* case of discrimination is rebutted. *Id.* at 512. The plaintiff is then "afforded the opportunity to demonstrate that an issue of material fact exists and that the legitimate

---

[4] Sotonwa does not argue that there is any direct evidence of racial discrimination in the record.

reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* (cleaned up).

Here, as the district court did, we assume without deciding that Sotonwa has established a *prima facie* case of discrimination on grounds that he is in a protected class, was qualified for his position, was demoted, and was replaced by someone outside of his protected group.[5] *McCoy*, 492 F.3d at 556. The burden therefore shifts to the VA to articulate a legitimate, nondiscriminatory reason for Sotonwa's demotion. *Okoye*, 245 F.3d at 512. The district court concluded that the VA proffered a legitimate, nondiscriminatory reason for Sotonwa's demotion. We agree.

As the VA argued below and on appeal, JangDhari, the official who made the final decision to demote Sotonwa, relied on several neutral and legitimate sources of evidence to support her decision, including her review of the BIA's evidence file, Hastings's memorandum proposing Sotonwa's demotion, and Sotonwa's oral and written responses to that proposed disciplinary action. The VA has thus succeeded in producing a legitimate, nondiscriminatory reason for demoting Sotonwa, so he must demonstrate that the legitimate reasons offered by the VA were not its true reasons but instead were a pretext for discrimination. *Id.* This is where the district court held that Sotonwa fell short. We hold the same.

Sotonwa claims that there "is no factual basis to support" the VA's position that he created an uncomfortable or hostile work environment. He argues that the VA has failed to articulate a clear or reasonably specific basis for its decision to demote him or show that its decision was based on neutral

---

[5] During the summary judgment proceedings, the VA disputed both that Sotonwa was qualified for the position that he held and that a similarly situated employee outside of his protected class was treated more favorably.

factors or characteristics. He further avers that his own evidence shows that the VA's opinions are "patently false." He also contends that two of his colleagues, Michael Grant and Rosa Mancha, believed that JangDhari was hostile towards him and subjected him to disparate treatment.

"In deciding whether summary judgment is warranted, a court should consider, among other things, the probative value of the proof that the employer's explanation is false and any evidence that supports the employer's case." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (cleaned up). Here, the VA has pointed to multiple sources of evidence in the record that support its stated reasons for demoting Sotonwa—none of which indicate that its decision was based on any of his protected characteristics. These sources of evidence include the AIB's investigative report which was based in part on interviews with numerous WTVA employees describing Sotonwa and his leadership style as "gruff, hard handed, a bully, autocratic, arrogant, abrasive, ugly, dictatorial and demeaning"; Hastings's written proposal to demote Sotonwa, which confirmed the AIB's findings that Sotonwa's conduct created an uncomfortable working environment after Hastings personally observed and spoke with numerous WTVA employees; and JangDhari's review of Sotonwa's oral and written responses to the proposed disciplinary action which involved an in-person hour-long meeting with Sotonwa and his attorney.

To the contrary, Sotonwa's rebuttal arguments amount to nothing more than his subjective beliefs that he was demoted for reasons other than those provided by the VA. He does not provide actual evidence of pretext, only unsupported speculation (his own, and that of Grant and Mancha) that is wholly contradicted by the record evidence. "[T]his court has held that a plaintiff's summary judgment proof must consist of more than a 'mere refutation of the employer's legitimate nondiscriminatory reason.'" *Jones*, 8

F.4th at 369 (quoting *Moore v. Eli Lilly & Co.*, 990 F.2d 812, 815 (5th Cir. 1993)). In other words, "'[m]erely disputing' the employer's assessment of the plaintiff's work performance 'will not necessarily support an inference of pretext.'" *Id.* (quoting *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999)). For these reasons, we hold that the district court did not err in rendering summary judgment in favor of the VA on Sotonwa's Title VII discrimination claims because he has failed to show that the VA's proffered legitimate, nondiscriminatory reason for his demotion was pretextual for discrimination. *Jones*, 8 F.4th at 369.

### B. Retaliation

Sotonwa further claims that the district court erred in granting summary judgment in favor of the VA on his retaliation claim. He contends that JangDhari's decision to begin the AIB investigation and subsequently demote him was retaliation for his filing two EEO complaints: (1) a 2017 complaint where he complained that another employee received a larger bonus than he did; and (2) a 2018 complaint against JangDhari where he claimed that she retaliated against him for filing the 2017 complaint and also harassed him and contradicted the work direction given to him by his interim supervisor. The VA counters that the only pre-demotion EEO complaint on file was Sotonwa's 2017 complaint and that there is no record evidence indicating that he filed an EEO complaint in March 2018. The VA submits that Sotonwa did eventually file a second EEO complaint but that it was not filed until February 2019, several months after the AIB investigation was complete and he had been demoted.

Title VII precludes employers from retaliating against employees because they "opposed, complained of, or sought remedies for, unlawful workplace discrimination." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 342 (2013) (citing 42 U.S.C. § 2000e–3(a)). When a litigant aims to

prove retaliation though circumstantial evidence, we apply *McDonnell Douglas* and require him to establish a *prima facie* case of retaliation. *Saketkoo v. Adm'r of Tulane Educ. Fund*, 31 F.4th 990, 1000 (5th Cir. 2022).

To establish a *prima facie* case of retaliation, an employee must show (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. *See Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020). At the *prima facie* stage, a plaintiff can demonstrate a causal link by showing close temporal proximity between the protected activity and the adverse employment action. *See id.* at 578.

If the plaintiff meets his burden of establishing a *prima facie* case of retaliation, the burden shifts to the employer "to articulate a legitimate, non-retaliatory reason for the adverse employment action." *Shahrashoob v. Texas A&M Univ.*, 125 F.4th 641, 652–53 (5th Cir. 2025). The employer's "burden is one of production, not persuasion." *Id.* at 653 (cleaned up) (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000)). If the employer meets its burden, the plaintiff is tasked with showing that the employer's proffered reasons are "a pretext for retaliation." *See id.* (cleaned up). "We have recognized that a plaintiff can show pretext through temporal proximity plus *significant* record evidence." *Id.* at 653–54 (emphasis in original). However, we have clarified that "a plaintiff fails to establish pretext when there is not significant record evidence beyond temporal proximity." *Id.* at 654.

Here again, the district court held that it was unnecessary for it to address the VA's and Sotonwa's disagreement over whether Sotonwa had established his *prima facie* case of retaliation because, like his discrimination claim, his retaliation claim failed at the pretext stage of the analysis. We agree. Although Sotonwa highlights the temporal proximity between his demotion

and his 2017 EEO complaint (and the purported EEO complaint he claims to have filed in 2018), he fails to provide additional "significant record evidence" in support of his pretext argument. *Id.* Indeed, Sotonwa provides no competent summary judgment evidence to support his speculative theory that JangDhari considered his prior 2017 EEO complaint, and presumably his 2018 complaint, when she made the decision to demote him.

In contrast, the VA has provided evidence that JangDhari did not recall Sotonwa's 2017 complaint and even if she had been aware of it, it did not play a role in her decision to accept Hastings's proposal to demote him. Likewise, when Hastings recommended that Sotonwa be demoted, he had no personal knowledge that Sotonwa had filed EEO complaints nor was Hastings working at the WTVA when Sotonwa submitted his first EEO complaint. Moreover, JangDhari and Hastings each pointed to significant record evidence that they relied on in reaching the ultimate decision to demote Sotonwa, none of which involved his prior EEO complaints. This included: (1) the AIB's report, compiled by four AIB members who did not know Sotonwa, indicating that Sotonwa's leadership style was deficient and led to an uncomfortable working environment for other employees; (2) Hastings's personal interactions with other WTVA employees supporting the conclusions drawn in the AIB's investigative report; and (3) JangDhari's personal review of Sotonwa's oral and written responses to his proposed demotion. In sum, as the district court observed, even if JangDhari was aware of Sotonwa's EEO complaints, which is disputed, Sotonwa has nevertheless failed to show that her ultimate reason for his demotion was pretextual for retaliation. *Id.* For these reasons, we hold that the district court did not err in rendering summary judgment in favor of the VA on Sotonwa's retaliation claim.

No. 24-11043

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment entered on all claims in favor of Defendant-Appellee Secretary of the United States Department of Veterans Affairs.